No. 107,312

In the Matter of SEAN E. SHORES, *Respondent*.

(279 P.3d 710)

Opinion filed July 6, 2012.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Sean E. Shores*, respondent, did not appear.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Sean E. Shores, of Wichita, an attorney admitted to the practice of law in Kansas in 2004.

On May 16, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC) and filed a supplement to the formal complaint on August 4, 2011. The respondent filed an answer to the formal complaint on September 13, 2011, and a document titled "answer" on October 12, 2011. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 27, 2011, where the respondent was personally present and was not represented by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence); 1.4(a) (2011 Kan. Ct. R. Annot. 452) (communication); 1.16(d) (2011 Kan. Ct. R. Annot. 535) (termination of representation); 8.4(b) (2011 Kan. Ct. R. Annot. 618) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer); 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 211(b) (2011 Kan. Ct. R. Annot. 334) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the hearing panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"*Complaint of the Honorable Timothy G. Lahey*, DA9788

"6.   [D.M.] retained the Respondent to represent her son, [B.M.], in a criminal case. The Respondent negotiated a plea agreement with the prosecution. Mr. [M.] entered the plea and the Court scheduled sentencing for October 19, 2005.

"7.   The day before the sentencing hearing, the Respondent's assistant contacted Judge Lahey's administrative assistant, April Kemner, seeking a continuance of the sentencing hearing. Previously, Donna Longsworth, the prosecutor, had agreed to the Respondent's request for a continuance. Ms. Kemner informed the Respondent's assistant that she did not have the authority to grant the Respondent's request for a continuance. The Respondent took no additional steps to get Mr. [M.'s] sentencing hearing continued.

"8.   On October 19, 2005, Mr. [M.] and Ms. Longsworth appeared for sentencing. The Respondent did not appear. Judge Lahey called the Respondent's office. The Respondent's assistant told Judge Lahey that the Respondent was in a preliminary hearing in a different division. Judge Lahey told the Respondent's assistant to have the Respondent call Judge Lahey personally to arrange for a new date for sentencing. The Respondent failed to call Judge Lahey.

"9.   From October 20, 2005, through November 9, 2005, Ms. Longsworth called the Respondent's office and left messages for the Respondent to call the court and reschedule the sentencing hearing. The Respondent failed to call the court to reschedule the sentencing hearing.

"10.   On November 10, 2005, the court held a hearing on Mr. [M.'s] case. Mr. [M.] and Ms. Longsworth appeared for the hearing. The Respondent did not appear at the hearing. Mr. [M.] told Judge Lahey that he had not heard from the Respondent. Subsequently, the Court appointed the public defender to represent Mr. [M.].

"11.   On December 5, 2005, Judge Lahey contacted Marc Davis, a member of the impaired lawyer's committee of the Wichita Bar Association, seeking assistance for the Respondent. On December 6, 2005, the Respondent and Mr. Davis met with Judge Lahey. The Respondent apologized for his conduct. Judge Lahey told the Respondent that he had a duty to represent Mr. [M.] unless Mr. [M.] requested otherwise. Judge Lahey advised the Respondent that he needed to take action. Judge Lahey and the Respondent agreed that the Respondent would participate in the mentoring program of the Wichita Bar Association and report to the Court regarding his participation in the mentoring program. The Court rescheduled Mr. [M.'s] sentencing for December 14, 2005.

"12.   The Respondent failed to participate in the mentoring program.

"13.   On December 14, 2005, Mr. [M.] appeared for sentencing. The Respondent again failed to appear. Mr. [M.] informed the Court that he had not heard from the Respondent. The Respondent did not inform the Court that he had been discharged by Mr. [M.]. During the December 14, 2005, hearing, Mr.

[M.] expressed that the Respondent's representation has been inadequate and that he wished to withdraw his plea. The Court allowed Mr. [M.] to withdraw his plea. Mr. [M.'s] case proceeded to trial with replacement counsel.

### *"Complaint filed by [K.T.], DA10418*

"14. On December 7, 2007, [K.T.] retained the Respondent to assist her with purchasing a business. Ms. [T.] paid the Respondent $500.00 for the representation. Ms. [T.] understood that the Respondent would review the franchise agreement over the weekend and contact her the following week to advise her. [Footnote: At the hearing on the Formal Complaint, the Respondent testified that Ms. (T.) was to call him the following week and she failed to do so. The Respondent testified that he had no record of Ms. (T.) calling his office. The Hearing Panel concludes that the Respondent's testimony lacks credibility on this subject.]

"15. The following week, the Respondent did not contact Ms. [T.]. After approximately two weeks, Ms. [T.] called the Respondent's office and left messages for the Respondent to call her. The Respondent failed to return the telephone calls.

"16. Ms. [T.] asked a business consultant, [C.R.], to contact the Respondent in her behalf. Mr. [R.] called the Respondent's office several times but was also unable to contact the Respondent. The Respondent did not return Mr. [R.'s] telephone calls.

"17. On January 28, 2008, Ms. [T.] filed a complaint with the Disciplinary Administrator's office. On May 7, 2008, while the disciplinary complaint was pending, the Respondent refunded Ms. [T.'s] $500.00 advanced fee.

### *"Complaint filed by [D.T.], DA10979*

"18. On April 24, 2009, [D.T.] retained the Respondent to represent her daughter, [L.H.], regarding the custody of Ms. [H.'s] minor child. Ms. [T.] paid the Respondent $750.00 for the representation.

"19. Ms. [T.] also requested that the Respondent advise Ms. [T.] regarding a possible wrongful termination of employment case against Wesley Medical Center. The Respondent agreed to review Ms. [T.'s] employment records and write the hospital a demand letter. The Respondent explained, however, that he would have to refer the matter to a different attorney as his wife was currently employed by the hospital. Thereafter, the Respondent sent Ms. [T.] a draft of the demand letter *via* electronic mail. Ms. [T.] made corrections to the letter and returned the letter to the Respondent.

"20. On June 11, 2009, Ms. [T.] retained the Respondent to represent her in a divorce action. Ms. [T.] paid the Respondent an additional $750.00 for that representation. Ms. [T.] provided the Respondent with the requisite personal information to prepare the pleadings. During this meeting, the Respondent provided Ms. [T.] with draft pleadings relating to the representation of Ms. [H.]. Further, the Respondent informed Ms. [T.] that Wesley Medical Center had not responded to the demand letter.

"21. On July 9, 2009, Ms. [T.] and her estranged husband, [J.T.], met with the Respondent. The Respondent provided them with the original divorce petition. Ms. [T.] and Mr. [T.] reviewed and signed the divorce petition. The Respondent informed them that he would be filing the divorce petition the following day.

"22. Also at the July 9, 2009, meeting, Ms. [T.] returned the pleadings related to Ms. [H.'s] custody case. Ms. [T.] noted changes that needed to be made to Ms. [H.'s] pleadings.

"23. Finally, at the July 9, 2009, meeting, Ms. [T.] asked the Respondent about the status of the wrongful termination of employment matter. The Respondent told Ms. [T.] that he was still looking for an attorney to refer Ms. [T.] to.

"24. Thereafter, the Respondent failed to remain in contact with Ms. [T.]. Ms. [T.] repeatedly called the Respondent regarding the status of the three matters. The Respondent failed to return the telephone calls. Eventually, Ms. [T.] sent the Respondent a text message threatening to file a complaint with the Disciplinary Administrator's office.

"25. The Respondent finally contacted Ms. [T.]. The Respondent told Ms. [T.] that he filed the divorce petition in October, 2009. Ms. [T.] called the courthouse and learned that the Respondent had not filed the divorce petition.

"26. On November 2, 2009, the Respondent again spoke with Ms. [T.] and Mr. [T.]. The Respondent told them that he had just taken the divorce petition to the courthouse and filed it. However, the Respondent had not filed the divorce petition for Ms. [T.].

"27. On December 15, 2009, Ms. [T.] wrote to the Respondent demanding the return of her records and a refund of the $1,500.00. The Respondent failed to return the papers and the advanced fee. On the day of the hearing on the Formal Complaint, the Respondent provided Ms. [T.] with a check in the amount of $1,500.00. The Respondent failed to return Ms. [T.'s] personal papers.

### "Complaint filed by the Honorable Bryce Abbott, DA11001

"28. On March 31, 2009, the Respondent entered his appearance in behalf of [A.C.], in the Wichita, Kansas, Municipal Court. That day, the Respondent informed the Honorable Bryce Abbott that Ms. [C.] would be applying for the diversion program.

"29. The Respondent secured a number of continuances to allow Ms. [C.] to raise the funds necessary to apply for diversion. Eventually, Judge Abbott scheduled Ms. [C.'s] case for trial on January 11, 2010.

"30. On January 11, 2010, Ms. [C.] appeared for trial. However, the Respondent did not appear at that time. Ms. [C.] informed Judge Abbott that the Respondent had the paperwork necessary for her to file her diversion application. Judge Abbott called the Respondent from the bench. The Respondent did not answer the telephone. A recording informed Judge Abbott that the Respondent's mail box was full. Judge Abbott rescheduled Ms. [C.'s] case for trial on February 8, 2010.

"31. On February 8, 2010, Ms. [C.] again appeared for trial. The Respondent failed to appear again. Judge Abbott again called the Respondent from the bench and again received only a recording that the Respondent's mail box was full. Judge Abbott wrote to the Respondent informing him that the case was again set for trial, on March 5, 2010. Judge Abbott also sent a copy of his letter to the Respondent to the Disciplinary Administrator. The Disciplinary Administrator docketed Judge Abbott's letter as a complaint.

"32. On March 5, 2010, Ms. [C.] again appeared for trial. The Respondent failed to appear at Ms. [C.'s] scheduled trial time for the third time. The Respondent never returned Ms. [C.'s] paperwork.

### *"Complaint filed by [M.R.], DA11088*

"33. At trial, a jury convicted [M.R.] of aggravated robbery. The Court sentenced the Respondent to 380 months in prison. Mr. [R.] is serving his sentence at the El Dorado Correctional Facility. Mr. [R.] took a direct appeal of his conviction and sentence. The Kansas Court of Appeals affirmed Mr. [R.'s] conviction and sentence.

"34. On December 4, 2009, [C.R.] and [L.R.], [M.R.'s] parents, retained the Respondent to represent [M.R.] in a post conviction matter based upon theories of prosecutorial misconduct, juror misconduct, and illegal sentence. [C.R.] and [L.R.] paid the Respondent $1,350.00 for the representation. Additionally, the Respondent was provided with a transcript pertaining to Mr. [R.'s] criminal case.

"35. Juanita Blackmon, a member of 'Justice Keepers of Wichita' also provided the Respondent with a $150.00 check for the representation. The Respondent agreed not to cash Ms. Blackmon's check until he visited Mr. [R.] in prison and provided a final draft of the motion.

"36. On December 28, 2009, the Respondent visited Mr. [R.] in prison. However, the Respondent had not prepared any documents for Mr. [R.'s] review. Mr. [R.] told the Respondent that if he did not have time to attend to Mr. [R.'s] case, he could simply refund the advanced fee. The Respondent told Mr. [R.] that he was still researching the issue and that he planned to assert a motion claiming manifest injustice.

"37. Between December 29, 2009, and January 2, 2010, [C.R.] and [L.R.] and Ms. Blackmon repeatedly attempted to contact the Respondent. The Respondent failed to return the telephone calls.

"38. On January 3, 2010, the Respondent returned Ms. Blackmon's telephone calls and apologized for the lack of action on Mr. [R.'s] behalf. The Respondent promised to provide Mr. [R.] with a final draft of a motion to correct an illegal sentence on January 6, 2010.

"39. On January 6, 2010, the Respondent did not visit Mr. [R.] in prison. Further attempts to reach the Respondent by Ms. Blackmon went unanswered.

"40. On May 3, 2010, Mr. [R.] filed a complaint with the Disciplinary Administrator's office. Mr. [R.] requested that the Respondent refund the advanced fees. Additionally, Mr. [R.] would like to have the transcript returned to him.

While the Respondent never cashed or deposited Ms. Blackmon's check for $150.00, Ms. Blackmon requested that the Respondent return her check to her so that it cannot be cashed or deposited in the future.

*"Complaint filed by the Disciplinary Administrator,* DA11118

"41. On April 8, 2010, the Sedgwick County District Attorney's office charged the Respondent in a one count complaint/information, charging the Respondent with the crime of aggravated indecent liberties, an off-grid person felony. The victim listed in the complaint/information was 12 years of age.

"42. Pursuant to a plea agreement, on December 10, 2010, the Sedgwick County District Attorney's office amended the information to include three counts of battery, class B person misdemeanors. The victim listed in the information was 12 years of age.

"43. The Respondent entered a plea of no contest to the three charges in the amended information. The Court sentenced the Respondent to a controlling sentence of 12 months in jail. The Court granted the Respondent probation from the jail time. The Respondent agreed to submit to an alcohol and drug evaluation and a psychological evaluation.

"44. At the time of the hearing on the Formal Complaint, the Respondent remained on probation for the misdemeanor convictions.

*"Respondent's Failure to Timely File an Answer to the Formal Complaint*

"45. On May 16, 2011, the Disciplinary Administrator filed a Formal Complaint in the instant case. The Respondent failed to timely file an Answer to the Formal Complaint. Thereafter, on August 4, 2011, the Disciplinary Administrator filed a Supplement to the Formal Complaint, alleging that the Respondent failed to timely file an Answer to the Formal Complaint.

"46. On September 13, 2011, the Respondent filed an Answer to the Formal Complaint. Then, on October 12, 2011, the Respondent filed a second document titled Answer, which answered the allegation that the Respondent failed to timely file an Answer to the Formal Complaint.

## "CONCLUSIONS OF LAW

"47. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 8.4, and Kan. Sup. Ct. R. 211, as detailed below.

"48. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his clients. The Respondent failed to provide diligent representation to Mr. [M.], Ms. [K.T.], Ms. [D.T.], Ms. [A.C.], and Mr. [R.]. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.3.

"49. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests

for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to return telephone calls and otherwise remain in contact with Mr. [M.], Ms. [K.T.], Ms. [D.T.], Ms. [A.C.], and Ms. Blackmon in Mr. [R.'s] behalf. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"50.    KRPC 1.16 also requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent violated KRPC 1.16(d) when he failed to return personal items and unearned advanced fees to Ms. [D.T.], when he failed to return Ms. [A.C.'s] paperwork, when he failed to return the unearned advanced fees to Mr. [R.'s] parents, and when he failed to return Mr. [R.'s] transcript. The Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"51.    'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent was convicted by his plea to three counts of misdemeanor battery on a 12 year old. Accordingly, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer, in violation of KRPC 8.4(b).

"52.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to appear in Court as directed by Judge Lahey. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"53.The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to timely file a written Answer to the Formal Complaint and by failing to timely file a written Answer to the Supplement to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"54.    In making this recommendation for discipline, the Hearing Panel con-

sidered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"55.  *Duty Violated.* The Respondent violated his duty to his clients to provide diligent representation and adequate communication. Additionally, the Respondent violated his duty to the public by failing to maintain his personal integrity. Finally, the Respondent violated his duty to the legal profession by failing to comply with Court orders and rules.

"56.  *Mental State.* The Respondent knowingly and intentionally violated his duties.

"57.  *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients and the legal profession.

"58.  *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"59.  *Dishonest or Selfish Motive.* The Respondent's misconduct related to the representation of Ms. [D.T.] was motivated by dishonesty. On more than one occasion, the Respondent informed Ms. [D.T.] that he had filed her divorce petition when he had not done so. Accordingly, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty.

"60.  *A Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct. In five of the six complaints, the Respondent failed to provide diligent representation and adequate communication. In three of the six cases, the Respondent failed to properly terminate his representation of his client. As such, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"61.  *Multiple Offenses.* The Respondent committed multiple offenses. The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 8.4, and Kan. Sup. Ct. R. 211.

"62.  *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent failed to comply with rules of the disciplinary process by failing to timely file an Answer to the Formal Complaint and by failing to timely file an Answer to the Supplement to the Formal Complaint.

"63.  *Refusal to Acknowledge Wrongful Nature of Conduct.* While the Respondent stipulated to many facts and rule violations, he failed to completely acknowledge his wrongdoing. The Respondent's refusal to acknowledge the full extent of his wrongdoing is an aggravating factor in this case.

"64.  *Vulnerability of Victim.* The Respondent's clients were vulnerable to his misconduct. Ms. [D.T.] remains married because she could not afford to retain replacement counsel. Mr. [R.] was in prison waiting for the Respondent to seek

relief. Finally, the victim in the criminal case was 12 years old. Thus, the Hearing Panel concludes that the victims of the Respondent's misconduct were vulnerable.

"65. *Indifference to Making Restitution.* While the Respondent provided Ms. [K.T.] a refund in May, 2010, and while the Respondent provided Ms. [D.T.] a refund at the hearing on the Formal Complaint, the Respondent has taken no steps to refund [C.R.] and Mrs. [L.R.] for the attorney fees paid in behalf of their son.

"66. *Illegal Conduct.* The Respondent engaged in illegal conduct and, as a result, was convicted of three counts of battery on a 12 year old.

"67. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"68. *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"69. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent provided some information that he had a nervous breakdown and abused alcohol for a period of time. The Respondent's mental health and abuse of alcohol may have contributed to some of the violations in this case.

"70. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent stipulated to many facts and rule violations included in the Formal Complaint.

"71. *Inexperience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 2004. The Respondent is inexperienced in the practice of law. However, the Respondent's inexperience does not significantly mitigate the misconduct in this case.

"72.*Imposition of Other Penalties or Sanctions.* In the sixth complaint, the Respondent was placed on probation and was required to comply with certain court orders.

"73. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'4.42 Suspension is generally appropriate when:

    (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

    (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"74.    The Disciplinary Administrator recommended that the Respondent be suspended from the practice of law for an indefinite period of time. The Respondent requested that he be placed on probation, pursuant to Kan. Sup. Ct. R. 211(g)(1). That rule provides:

'If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.'

The Respondent failed to comply with Kan. Sup. Ct. 211(g). First, he failed to timely provide a copy of his plan of probation to the Disciplinary Administrator and the Hearing Panel. Additionally, the Respondent's plan of probation is not workable, substantial, and detailed. The Respondent's plan of probation is inadequate to protect the public from the Respondent's misconduct. The misconduct in the sixth complaint cannot be corrected by probation. Finally, placing the Respondent on probation is not in the best interests of the citizens of the State of Kansas.

"75.    Based upon the findings of fact and conclusions of law, the Hearing Panel was inclined to recommend that the Respondent be disbarred. However, based upon the recommendation of the Disciplinary Administrator and the ABA Standards, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for an indefinite period of time. Given the severity of the misconduct and the pattern of misconduct by the Respondent, the suspension should be for a substantial period of time. In the event the Respondent applies for reinstatement in the future, the Respondent should be required to provide credible medical evidence demonstrating a sustained period of recovery from his mental health problems and alcohol abuse.

"76. Finally, the Respondent should be ordered to refund $1,350.00 to Mr. and Mrs. Ridge for the unearned advanced fee paid on Mr. Ridge's behalf. If the Respondent continues to possess Mr. Ridge's transcript and Ms. Troxell's personal papers, the Respondent should be ordered to return those items immediately.

"77. Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. The panel's findings of fact are thus deemed admitted, and we adopt them. See Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352).

The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore also adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline. At the hearing before this court, the respondent did not appear. Due to respondent's failure to appear, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The hearing panel recommended that respondent be suspended indefinitely from the practice of law; that the suspension be for a substantial period of time, and that, should respondent apply for reinstatement, he be required to provide credible medical evidence demonstrating a sustained period of recovery from his mental

health problems and alcohol abuse; he refund $1,350 to [C.R.] and [L.R.]; and that he return Mr. [R.'s] transcript and Ms. [D.T.'s] personal papers if he still has them.

We also note that respondent appeared before this court on April 16, 2012, to show cause why his license to practice law should not be temporarily suspended. Supreme Court Rule 203(b) (2011 Kan. Ct. R. Annot. 280). As a result of that hearing, on April 17, 2012, respondent's license was temporarily suspended based on multiple allegations of continued misconduct similar to those at issue in this proceeding. Further, at that hearing, respondent stated he was going to voluntarily surrender his license prior to the oral argument set on this matter. The office of the Disciplinary Administrator has had no further contact with respondent since that proceeding.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Sean E. Shores be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2011 Kan. Ct. R. Annot. 280).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.