No. 99,077

In the Matter of JAMES PAUL DAVIDSON, *Respondent.*

(175 P.3d 855)

Opinion filed February 1, 2008.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause, and was on the formal complaint for petitioner.

*James Paul Davidson,* respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against Respondent James Paul Davidson, a Salina attorney licensed to practice law in Kansas since September 1980.

The formal complaint charged Respondent in Count I with violations of Kansas Rules of Professional Conduct (KRPC) 1.7 (2006 Kan. Ct. R. Annot. 411) (conflict of interest, own interests adverse to client); KRPC 1.8 (2006 Kan. Ct. R. Annot. 417) (conflict of interest, prohibited transactions with clients); KRPC 4.4 (2006 Kan. Ct. R. Annot. 488) (respect for rights of third persons); and KRPC 8.4 (2006 Kan. Ct. R. Annot. 510) (criminal act reflecting adversely on fitness as lawyer; misconduct prejudicial to the administration of justice); and in Count II with a second violation of KRPC 8.4.

Respondent filed an answer and appeared in person and through counsel at his April 17, 2007, disciplinary hearing. The panel filed its final hearing report on July 13, 2007.

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties, and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]" *In re Lober,* 276 Kan. 633, 636-37, 78 P.3d 442 (2003).

## Factual Background

This proceeding arose out of two series of events. The first had to do with Respondent's dispute with a client over a mutual business transaction, the second with Respondent's criminal conduct. The hearing panel made the following relevant findings of fact:

### The Red Kitten Dispute

Mark Hughey is the president and sole stockholder of Phat Kat Enterprises, a Kansas corporation, which purchased a bar in Salina called the Red Kitten in the fall of 2003. In late May or early June 2005, Hughey received a letter from his landlords, Helen and Rusty Leister. The Leisters advised Hughey that he was 10 days behind in his rent and gave him 10 days to become current or face eviction.

Because Hughey believed the lease included terms different than those referred to by the Leisters, he contacted Respondent for legal advice. Respondent and his wife, Laurie Davidson, were frequent customers at the Red Kitten. Respondent met with Hughey and agreed with Hughey's interpretation of the lease terms; Respondent then drafted and forwarded a letter to the Leisters stating Hughey's position.

In addition to discussing the lease issue, Respondent and Hughey had discussed the financial situation of the Red Kitten. Hughey told Respondent that the Red Kitten was not making enough money and that Hughey was experiencing personal financial difficulties as a result. By mid-June 2005, Hughey decided to close the bar. Respondent was present at the time Hughey and his friends began removing liquor and personal property from the Red Kitten premises.

The next day, Respondent asked Hughey how much money it would take to keep the Red Kitten open. Hughey told Respondent that $10,000 would cover the bar's outstanding obligations. Respondent obtained $10,000 and provided it to Hughey as part of an agreement made between them at the time. Hughey asked Respondent to reduce their agreement to writing, but Respondent assured Hughey that a written agreement was not necessary and that the two of them would work "it" out.

Based on his discussions with Respondent, Hughey understood that the $10,000 represented a loan, that he would pay a total of $500 in interest on the $10,000, and that he would retire his debt over time by forwarding 51 percent of Red Kitten profits to Respondent. In addition, Hughey expected Respondent's wife to work at the bar to reduce payroll obligations.

Hughey was not given an opportunity to seek advice of independent counsel on the transaction and, as mentioned, neither had a copy of the transaction's terms in writing nor consented to them in writing.

At some later point, Respondent's wife told Hughey that she and Respondent owned a 51 percent interest in the bar. Hughey contacted Respondent to confirm that Respondent did not have an ownership interest; Respondent told Hughey that his was an investment interest. Hughey again asked Respondent to put their agreement in writing, and, again, Respondent told Hughey that a written agreement was not necessary.

In August 2005, Hughey decided to sell the Red Kitten. He contacted Respondent to see if he was interested in purchasing the bar. On the same day, Hughey met with Red Kitten employees and expressed concern about Respondent and his wife being behind the bar and pouring drinks for customers. Hughey believed Respondent and his wife had each been convicted of alcohol-related criminal offenses, and bars may be fined if they employ such persons to pour drinks.

Shortly thereafter, Hughey received a message from Respondent on his answering machine. In the message, Respondent demanded that Hughey turn over the keys to the Red Kitten. If Hughey did not do so, Respondent threatened, Hughey and his girlfriend would be arrested if they returned to the bar. Hughey attempted to reach the Respondent by telephone, but Respondent refused to take Hughey's calls. At this point, Hughey retained new counsel, Scott Condray.

Respondent posted a notice on the door of the Red Kitten. The notice stated that Respondent was now in charge of the bar and would be making all business decisions.

Respondent met with Condray, and Condray questioned Respondent about why he had threatened Hughey and his girlfriend with incarceration. Respondent explained that he had been advised the girlfriend had committed felony aggravated battery on Hughey, and Hughey had committed felony obstruction related to law enforcement's investigation of the girlfriend. Respondent later learned that his source of information on these subjects was unreliable.

After exhaustive negotiations, Condray and Respondent were able to arrive at terms under which Respondent would purchase the Red Kitten from Hughey. At the time of Respondent's disciplinary hearing, the panel found that Respondent continued to own the bar.

## Criminal Conduct

On February 26, 1986, Respondent was charged in the Shawnee County District Court with driving under the influence of alcohol and driving while suspended, misdemeanor offenses. On March 12, 1986, Respondent and the district attorney entered into a diversion agreement. Respondent successfully completed the diversion, and on March 12, 1987, the court dismissed the case pending against him.

On January 2, 1997, Respondent was charged with resisting arrest; criminal damage to property; and unlawful discharge of a firearm, misdemeanor offenses, in the Municipal Court of Salina. On January 8, 1997, Respondent and the city prosecutor entered into a diversion agreement, which Respondent successfully completed. On January 22, 1998, the case against him was dismissed.

On January 20, 1998, Respondent was charged in the Shawnee County District Court with driving under the influence of alcohol, speeding, and failure to maintain proper registration, misdemeanor offenses. Respondent entered a plea of nolo contendere to DUI on October 23, 1998. Pursuant to the plea, the court dismissed the remaining charges and sentenced Respondent to 6 months. The court ordered Respondent to spend 48 hours in jail and then placed Respondent on probation for 1 year.

On August 20, 1998, while on probation in the second Shawnee County case, Respondent was charged in the Geary County District Court with DUI; driving in violation of license restrictions; obstruction of official duty; and littering, misdemeanor offenses. It appears Respondent was convicted only of obstruction. It is unclear why the Geary County DUI was not charged as a felony, given Respondent's criminal history.

On April 17, 2001, the Salina City Prosecutor charged Respondent with DUI; defective headlights; and refusal to submit to a preliminary breath test, misdemeanor offenses. Pursuant to a plea agreement, Respondent pleaded guilty to DUI, and the municipal court sentenced Respondent to 1 year in jail, later placing him on probation for 1 year after Respondent served 5 days in custody. The court also ordered Respondent to pay a $500 fine. On June 20, 2002, the Municipal Court of Salina released Respondent from probation. Again, it is unclear why the Respondent was not charged with felony DUI, given his criminal history.

On February 19, 2002, while on probation in the second Salina Municipal Court case, the Salina City Prosecutor charged Respondent with driving while his license was suspended, a misdemeanor. Respondent pleaded guilty and was sentenced to 5 days in jail. However, the court released Respondent, placed him on unsupervised probation, and ordered him to pay a fine. The court released Respondent from probation on November 15, 2002.

Based on Respondent's criminal record, the State of Kansas certified Respondent as a habitual violator and revoked his driver's license. On August 21, 2002, again, while Respondent was on probation, he was charged by the Salina City Prosecutor with driving a vehicle while his license was revoked. On September 23, 2002, Respondent entered a no contest plea. The court sentenced Respondent to 10 days in jail and a fine of $250. The court placed Respondent on unsupervised probation for 6 months, and, on March 3, 2003, released Respondent from probation.

On December 14, 2003, Respondent was charged in the Ottawa County District Court with one count of battery and two counts of driving while revoked, misdemeanor offenses. The complaint identified Respondent's wife as the battery victim. The county attorney

dismissed the two counts of driving while revoked and entered into a diversion agreement with Respondent on the battery charge. On April 15, 2006, Respondent completed the terms and conditions of diversion, and the case against Respondent was dismissed.

## Hearing Panel's Conclusions

Based on its findings of fact, the hearing panel concluded as a matter of law that Respondent violated KRPC 1.7(b), which provides:

"A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." 2006 Kan. Ct. R. Annot. 440.

Respondent's KRPC 1.7(b) violation resulted from his dispensation of legal advice to Hughey at the same time he acquired some sort of interest in Hughey's business. Because Respondent's representation may have been materially limited by his own interests, the panel noted that the provisional statements of the rule must be met. The members of the panel did not think Respondent could reasonably have believed that his representation of Hughey would not be adversely affected.

The hearing panel concluded that Respondent violated KRPC 1.8(a), which prohibits lawyers from entering into certain transactions without satisfying certain specific conditions. That rule provides:

"(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:

"(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; and

"(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

"(3) the client consents in writing thereto." 2006 Kan. Ct. R. Annot. 417.

Here, Respondent violated KRPC 1.8(a) when he entered into a business transaction with Hughey without complying with the terms of the rule. Because there was little agreement about the actual terms of the transaction, the panel found it impossible to determine whether the terms were fair and reasonable to the client. Moreover, the transaction and terms were not transmitted in writing; Hughey was not given the opportunity to seek advice from independent counsel; and Hughey did not consent to the transaction in writing.

The hearing panel also concluded that Respondent violated KRPC 8.4(b), which provides: "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." (2006 Kan. Ct. R. Annot. 510-11). To support this violation, the panel relied on Respondent's numerous convictions and diversions for DUI, driving while suspended and driving while revoked, resisting arrest, criminal damage to property, unlawful discharge of a firearm, battery, and obstruction.

Finally, the panel concluded that Respondent also violated KRPC 8.4(d), which provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." (2006 Kan. Ct. R. Annot. 510-11). The panel cited Respondent's "extensive criminal conduct" as evidence of this violation.

### Recommendations

The panel recommended that Respondent be suspended for 1 year and that his reinstatement to practice be conditioned upon his compliance with recommendations set forth in a report generated by Clinical Coordinator Duane Olberding of St. Francis Health Center. Olberding, who had performed a chemical dependency evaluation on Respondent after referral from the Disciplinary Administrator, recommended that, during a 1-year monitoring and assessment period, the Respondent should: (1) abstain from all mood-altering chemicals, including alcohol; (2) enter an outpatient individual therapeutic relationship with an approved alcohol and drug counselor with goals of accepting his alcoholism,

increasing relapse prevention skills, further assessing possible mood disorders, and case management for at least 1 year with monthly reports to the Disciplinary Administrator; (3) attend weekly 12-step meetings and provide proof of attendance to the counselor; (4) complete psychological testing with results provided to the counselor and Olberding; (5) maintain monthly communication with the impaired attorneys program; and (6) set up a professional monitoring system that would include monthly random urinalysis testing, with releases of information to and from the professional monitoring program, the counselor, and the Disciplinary Administrator's office. Positive tests during this 1-year period would indicate the need for further assessment and a possible increase in treatment structure.

The panel considered the following factors based on the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 ed.):

"*Duty Violated.* The Respondent violated his duty to his client to avoid conflicts of interest. Additionally, the Respondent violated his duty to the legal profession and to the public to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual harm to Mr. Hughey, and to the reputation of the legal profession."

## The panel found the following aggravating factors present:

"Dishonest or Selfish Motive. Engaging in the conflict of interest with Mr. Hughey was clearly motivated by selfishness.

"A Pattern of Misconduct. The Respondent engaged in a pattern of criminal behavior for a period of 19 years. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.7(b), KRPC 1.8(a), KRPC 8.4(b), KRPC 8.4(d). As such, the Respondent committed multiple offenses.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent failed to completely acknowledge the wrongful nature of his misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted Respondent to practice law in 1980. The Respondent has been practicing law for 27 years. Accordingly, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Illegal Conduct. The Respondent has been placed on diversion for and convicted of criminal offenses in eight separate criminal cases. Thus, the Respondent has engaged in criminal conduct."

The panel also considered the following mitigating factor:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined."

The panel considered the following two ABA Standards:

"Suspension is generally appropriate when a lawyer knows of a [conflict] of interest and does not fully disclose to the client the possible effect of that conflict, and causes injury or potential injury to a client." Standard 4.32.

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2.

The Deputy Disciplinary Administrator recommended that Respondent be suspended for 6 months. Respondent advocated for no suspension and suggested he be allowed to propose a probation plan in line with the recommendations made by Olberding.

Respondent took no exceptions to the final hearing report of the hearing panel.

We hold that the panel's findings of fact and conclusions of law are amply sustained by the evidence and hereby adopt them as our own.

In addition, we note that Respondent's demeanor and statements at oral argument before this court only amplified our concern about his health and his ability to practice law. Despite the alarm Respondent's numerous criminal convictions and diversions should raise and despite his familiarity with Olberding's evaluation results and recommendations, Respondent appeared to have little insight into his problem with alcohol. He exhibited even less interest in solving it. Under these circumstances, and in view of the harm already done to one client, the majority of this court believes indefinite suspension to be necessary. A minority would impose a less severe sanction.

IT IS THEREFORE ORDERED that James Paul Davidson be and he is hereby indefinitely suspended from the practice of law in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R.

Annot. 261) for his violations of KRPC 1.7(b), 1.8(a), and 8.4(b) and (d).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed to Respondent.

NUSS, J., not participating.

LEBEN, J., assigned.