No. 107,752

In the Matter of MEGAN LEIGH HARRINGTON, *Respondent*.
(293 P.3d 686)

Opinion filed January 11, 2013.

*Kimberly Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the brief for the petitioner.

*James M. Brun*, of Overland Park, argued the cause and was on the brief for respondent, and *Megan Leigh Harrington*, respondent, argued the cause pro se and was with him on the brief.

*Per Curiam*: This is a contested original proceeding in discipline filed against the respondent Megan Leigh Harrington, an attorney admitted to the practice of law in Kansas in 2004.

The office of the Disciplinary Administrator filed a formal complaint against respondent on January 6, 2012, alleging violations of the Kansas Rules of Professional Conduct (KRPC), and respondent answered the complaint on January 30, 2012. On February 9, 2012, the respondent filed a proposed plan of probation. The Kansas Board for Discipline of Attorneys conducted a hearing on February 22, 2012, at which the respondent was present and represented by counsel. The hearing panel determined respondent violated KRPC 8.4(b) (2011 Kan. Ct. R. Annot. 618) (commission of a "criminal act that reflects adversely on the lawyer's . . . fitness as a lawyer"). As set out in the final hearing report, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"6. On April 18, 2009, the Respondent ingested cocaine and alcohol. At approximately 4:00 a.m., the Respondent drove her father's vehicle the wrong way on highway K10 and struck another vehicle. Both cars sustained disabling damage. The driver of the other car suffered minor injuries.

"7. Law enforcement officers obtained a search warrant to obtain a sample of the Respondent's blood and urine. The laboratory test results from the Kansas Bureau of Investigation (KBI) established that the Respondent had cocaine in her

system. Additionally, the laboratory test results from the KBI also established that the Respondent's blood alcohol concentration was .16 per 100 milliliters of blood, twice the legal limit.

"8.   On May 6, 2009, the Johnson County District Attorney charged the Respondent in a two count complaint, alleging reckless aggravated battery (felony) and driving under the influence of alcohol (misdemeanor).

"9.   On October 29, 2010, pursuant to a plea agreement, the Johnson County District Attorney amended the complaint to include battery (misdemeanor), driving under the influence of alcohol (misdemeanor), and obstruction of official duty (misdemeanor). The Respondent entered a plea of guilty to battery, driving under the influence of alcohol, and obstruction of official duty.

"10.   For the conviction of obstruction of official duty, the Johnson County District Court sentenced the Respondent to serve 360 days in jail.

"11.   Regarding the conviction of battery, the Court sentenced the Respondent to serve 180 days in jail, consecutive to the sentences for the other convictions.

"12.   Finally, the Court sentenced the Respondent to serve 180 days in jail for the conviction of driving under the influence of alcohol. Again, the jail sentence for the conviction of driving under the influence of alcohol was ordered to be consecutive to the sentences for the other two convictions. The Court ordered the Respondent to pay a fine of $500.00. Finally, the Court ordered that an ignition interlock device be installed on all vehicles operated by the Respondent for a period of two years.

"13.   The Court ordered the Respondent to serve 45 days in jail for 'shock time.' Additionally, following the completion of the jail time, the Court ordered that the Respondent be placed on house arrest for 60 days. The Court granted the Respondent's request for probation. The Court ordered the Respondent's supervised probation to last three years. The Respondent completed the jail time and the house arrest time between November, 2010, and February, 2011. The Respondent remains on probation.

"14.   On April 29, 2009, the Respondent entered into a one-year monitoring agreement with the Kansas Lawyers' Assistance Program. The Respondent completed the monitoring agreement in April, 2010. During the one-year monitoring period, the Respondent completed alcohol and drug treatment and attended AA meetings. Following the one-year monitoring period, the Respondent has not participated in any alcohol or drug treatment, she has not participated in any relapse prevention program or counseling, nor has she attended any AA meetings.

"15.   During the hearing on the Formal Complaint, the Respondent testified that her previous use of cocaine was a social activity. She acknowledged drinking alcohol to excess and ingesting two lines of cocaine on the night of April 18, 2009.

"16.   The Respondent also testified that every random drug test that she has submitted to since her arrest has been negative for illegal drugs and alcohol.

## "CONCLUSIONS OF LAW

"17. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4, as detailed below.

"18. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). The Respondent entered a plea of guilty to battery, driving under the influence of alcohol, and obstruction of official duty. Thus, the Hearing Panel concludes that the Respondent committed criminal acts that reflect adversely on her fitness as a lawyer in other respects, in violation of KRPC 8.4(b). The Respondent has admitted to this violation.

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"19. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"20. *Duty Violated.* The Respondent violated her duty to the public to maintain her personal integrity.

"21. *Mental State.* The Respondent knowingly violated her duty.

"22. *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to a member of the public and to the legal profession.

"23. *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"24. *Refusal to Acknowledge Wrongful Nature of Conduct.* During the hearing on the Formal Complaint, the Respondent testified that (1) she does not have an alcohol problem, (2) she acknowledged the conclusions of the professionals that she may have an alcohol problem, and (3) she has an alcohol problem. As a result of the Respondent's conflicting testimony, the Hearing Panel is unable to conclude that the Respondent has a full understanding and appreciation of her problem with alcohol. Further, the Respondent's casual testimony regarding the ingestion of cocaine disturbed the Hearing Panel. As an officer of the Court, the Respondent needs to have a full appreciation of her duty to the Court to refrain from engaging in criminal conduct.

"25. *Illegal Conduct, Including that Involving the Use of Controlled Substances.* The Respondent engaged in illegal conduct. She entered a plea of guilty to battery, driving under the influence of alcohol, and obstruction of official duty. Further, the Respondent testified that she ingested cocaine.

"26. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its rec-

ommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"27. *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined.

"28. *Inexperience in the Practice of Law.* At the time of the misconduct, the Respondent had been a member of the Kansas bar for less than five years. The Hearing Panel, therefore, concludes that the Respondent was inexperienced in the practice of law.

"29. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent is an active member of the bar of Johnson County, Kansas. She enjoys the respect of her peers and clients as evidenced by letters received by the Hearing Panel.

"30. *Imposition of Other Penalties or Sanctions.* As a result of her three misdemeanor convictions, the Respondent served 45 days in jail and 60 days on house arrest. Additionally, the Respondent is currently serving three years supervised probation.

"31.In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

## "RECOMMENDATION

"32. The Disciplinary Administrator recommended that the Respondent be suspended from the practice of law for a period of two years. The Respondent requested that her request for probation be granted pursuant to her proposed probation plan. The Respondent also stated her willingness to comply with any conditions imposed by the Hearing Panel.

"33. The probation rule provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint

put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.' Kan. Sup. Ct. R. 211(g).

"34. Kan. Sup. Ct. R. 211(g) precludes the Hearing Panel from adopting the Respondent's request for probation. First, the Respondent failed to "put the plan of probation into effect by complying with each of the terms and conditions of the probation plan." Additionally, the Respondent's proposed plan of probation is not: 'workable, substantial, and detailed.' Finally, it is not in the best interests of the citizens of the State of Kansas to place the Respondent on probation.

"35. Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of three months. Because the Hearing Panel is concerned that the Respondent does not fully understand or accept her problem with alcohol, the Hearing Panel establishes the following additional conditions for reinstatement:

'a. The Respondent shall immediately obtain an alcohol and drug evaluation at Professional Treatment Services in Lawrence, Kansas, and follow all recommendations of Professional Treatment Services. She shall provide to the Disciplinary Administrator, in writing, the results of the evaluation as well as evidence of compliance with all such recommendations.

'b. The Respondent shall immediately renew her monitoring agreement with the Kansas Lawyers' Assistance Program and, again, avail herself of the opportunities for lawyers through that program for a period of at least one year.

'c. The Respondent shall immediately resume attendance at meetings of Alcoholics Anonymous or comparable group on a weekly, or more frequent, basis, and report her attendance and participation in writing to the Disciplinary Administrator on at least a monthly basis for at least one year.'

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

Pursuant to Supreme Court Rule 212(e) (2011 Kan. Ct. R. Annot. 352), respondent filed exceptions to the panel's final hearing

report on April 11, 2012, taking exception to: (1) the hearing panel's failure to make detailed findings regarding her treatment, her efforts to remain sober, and the results of her random drug screenings; (2) the panel's finding of the aggravating factor of refusal to acknowledge the wrongful nature of the conduct and the panel's failure to find certain mitigating factors; (3) the panel's failure to find she met the requirements for probation; (4) the panel's suggested conditions for reinstatement.

## RESPONDENT'S VIOLATION OF KRPC 8.4(b)

None of respondent's exceptions concern whether she violated KRPC 8.4(b) by engaging in criminal conduct reflecting adversely on her fitness as a lawyer. In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties to determine whether the attorney violated the KRPC. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that the "truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent does not contest that she violated KRPC 8.4(b), which provides: "It is professional misconduct for a lawyer to: . . . commit a criminal act that reflects adversely on the lawyer's . . . fitness as a lawyer." 2011 Kan. Ct. R. Annot. 618. Respondent admitted at her disciplinary hearing that she pled guilty to three misdemeanors: battery, driving under the influence, and obstruction of official duty.

These convictions reflect adversely on respondent's fitness to practice. See, *e.g.*, *In re Millett*, 291 Kan. 369, 377, 379-80, 241 P.3d 35 (2010) (approving panel finding that obstruction of official duty violated KRPC 8.4[b]); *In re Angst*, 278 Kan. 500, 501, 505, 102 P.3d 388 (2004) (approving panel finding that misdemeanor domestic battery violated KRPC 8.4[b]). We conclude respon-

dent's violation of KRPC 8.4(b) is established by clear and convincing evidence.

### RESPONDENT'S EXCEPTIONS TO THE PANEL'S FACTUAL FINDINGS

Although respondent's exceptions to the panel's factual recitation have no bearing on her violation of KRPC 8.4(b), the panel's findings could have impacted its conclusions as to aggravating and mitigating circumstances. Therefore, we briefly address respondent's factual exceptions.

Respondent argues the panel's factual findings regarding her treatment were overly general and should be supplemented. The hearing report stated:

"14. On April 29, 2009, the Respondent entered into a one-year monitoring agreement with the Kansas Lawyers' Assistance Program. The Respondent completed the monitoring agreement in April, 2010. During the one-year monitoring period, the Respondent completed alcohol and drug treatment and attended AA meetings. Following the one-year monitoring period, the Respondent has not participated in any alcohol or drug treatment, she has not participated in any relapse prevention program or counseling, nor has she attended any AA meetings."

Respondent contends the panel should have explained that she attended approximately 30 individual counseling sessions over a 1-year period, that her year of treatment greatly exceeded the 15 weeks recommended by her substance evaluation, that she provided documentation of clean drug screenings, and that she continues informal treatment such as meditation and exercise.

We conclude the panel made adequate factual findings concerning respondent's treatment and compliance with monitoring. The report details several steps respondent took to address her issues and the panel's specific findings demonstrate that it considered and concluded that respondent made efforts to address her problems and never tested positive for inappropriate substances. Respondent cited no authority or compelling reason why the panel was required to detail further her treatment. The panel's factual findings were sufficient. See *In re Lovelace*, 286 Kan. 266, 269-70, 182 P.3d 1244

(2008) (approving a panel's findings when the findings implicitly considered specific acts).

## APPROPRIATE PUNISHMENT

The panel recommended respondent be suspended from the practice of law for 3 months. The panel's recommendation is advisory and does not prevent this court from imposing a greater or lesser punishment. Supreme Court Rule 212(f) (2011 Kan. Ct. R. Annot. 352). The disciplinary panel must weigh the evidence presented on aggravating and mitigating factors but is not required to discuss every potential factor. See *In re Walsh*, 286 Kan. 235, 248, 182 P.3d 1218 (2008); *In re Trester*, 285 Kan. 404, 412, 172 P.3d 31 (2007). In determining the appropriate sanction, this court considers the facts and circumstances of the case as well as aggravating and mitigating factors. *In re Swanson*, 288 Kan. 185, 214-15, 200 P.3d 1205 (2009); Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334).

### *Aggravating Factors*

The panel found two aggravating factors: (1) respondent's refusal to acknowledge the wrongful nature of her conduct; and (2) respondent's engaging in illegal conduct. Respondent took exception only with the panel's findings on the first factor.

The panel concluded respondent's conflicting testimony regarding whether she was dependent on alcohol demonstrated a failure to acknowledge the wrongful nature of the conduct. But respondent argues her testimony was not conflicting on this matter. At the hearing, respondent admitted she had a substance abuse issue but testified she was unsure whether she was dependent on alcohol. She further stated she had been unable to resolve this issue in treatment.

Our review of the respondent's testimony does not substantiate the panel's finding regarding conflicting testimony. While respondent consistently testified she did not know if she was an alcoholic or dependent, she knew she abused substances. Thus, we hold the panel erred in concluding respondent's testimony was conflicting.

Despite this error, we agree with the panel's conclusion that respondent failed to fully acknowledge the wrongful nature of her conduct. The panel characterized respondent's testimony regarding her use of cocaine as "casual," referring to respondent's testimony acknowledging that cocaine use was illegal but stating that she addressed it in her treatment. Respondent further testified:

"[Cocaine] was something that I used recreationally. It was—again, not as an excuse—just something that the people I was surrounding myself with, that was kind of a part of—of going out and the lifestyle that kind of was glorified, and we would go to the club downtown, and it was this whole scene. I didn't even, I think, have a real appreciation for the fact, even recreationally that I was using the drug. And my friends had it that night, and I was just kind of part of—you know, someone had it, I—they offered it to me and I did it."

The record supports the panel's characterization of respondent's testimony as "casual," particularly considering that the panel was in the best position to make this determination. Thus, we will not disturb the panel's assessment that respondent failed to acknowledge the wrongful nature of her conduct.

Finally, respondent argues the panel erred as a matter of law in finding the aggravating factor of refusal to acknowledge the wrongful nature of conduct can only be found when the attorney either entirely fails to acknowledge the violations or minimizes the conduct. The panel concluded: "As an officer of the Court, the Respondent needs to have a full appreciation of her duty to the Court to refrain from engaging in criminal conduct."

Although respondent apologized and admitted wrongdoing, the panel nevertheless could find, based on her testimony and demeanor, that she did not appreciate the full extent of her misconduct. See *In re Shores*, 294 Kan. 680, 687, 279 P.3d 710 (2012) (imposing discipline when panel found that even though an attorney stipulated to rule violations he failed to acknowledge the "full extent" of the wrongdoing); *In re Wiechman*, 290 Kan. 70, 74-75, 222 P.3d 485 (2010) (imposing discipline when panel found the attorney "refused to acknowledge the true extent of the misconduct"); *In re Davidson*, 285 Kan. 798, 805, 175 P.3d 855 (2008) (imposing discipline when attorney failed to "completely acknowledge" the wrongful nature of the misconduct).

In summary, although we disagree with the panel's conclusion that respondent provided conflicting testimony regarding her dependency on alcohol, we nevertheless conclude the panel's conclusion that respondent failed to appreciate the wrongful nature of her conduct is legally and factually sound.

*Mitigating Factors*

The panel concluded respondent's absence of a prior disciplinary record, inexperience in the practice of law, previous good reputation in the community, and the other penalties imposed for the conduct mitigated respondent's discipline.

Respondent took exception to the panel's failure to find an additional seven mitigating factors: (1) chemical dependency; (2) timely good faith effort to make restitution or rectify consequences of misconduct; (3) delay in disciplinary proceedings; (4) absence of dishonest or selfish motive; (5) presence of a full and fair disclosure or cooperation during the hearing; (6) personal or emotional problems contributing to the misconduct; and (7) remorse. The panel, however, was not required to address every factor. See *In re Trester*, 285 Kan. at 412. Further, after reviewing the record, we conclude the panel's decision not to find the seven mitigating factors was supported and reasonable.

Respondent did not submit evidence of two of the factors. The mitigating factor of chemical dependency requires medical evidence of dependency which respondent did not present. ABA Standards 9.32(i). Additionally, the argument that her dependency should mitigate her punishment conflicts with her testimony at the hearing that she is not dependent on alcohol.

Respondent also failed to present any evidence that she made a good faith effort to make restitution or rectify the consequences of her misconduct. While respondent presented evidence that her insurance company ultimately settled with the other driver involved in the accident, she presented no evidence of any affirmative action on her part to ensure that the victim was made whole.

Respondent also advocates delay as a mitigating factor, pointing out that more than 2½ years passed from the date of her accident to the filing of the formal complaint. But this argument overlooks

that the Disciplinary Administrator charged the formal complaint based on respondent's criminal conduct, and the formal complaint was filed just over a year after her conviction. Respondent is not entitled to have her discipline mitigated by delay. See *In re McGraw*, 289 Kan. 813, 817, 217 P.3d 25 (2009) (approving finding by panel that delay mitigated discipline when Disciplinary Administrator filed formal complaint about 2 years and 11 months after respondent's criminal conviction); *In re Miller*, 282 Kan. 689, 698-99, 147 P.3d 150 (2006) (concluding delay mitigated respondent's discipline when the matter "languished" in the Disciplinary Administrator's office for almost 3 years).

The record supports, to some degree, the existence of the remaining four factors—absence of dishonest or selfish motive, full and free disclosure to the board, personal or emotional problems, and remorse. However, we note that the record consists only of the respondent's own testimony. Further, as noted, the panel was not required to address every factor. Under these circumstances, we conclude the evidence is not sufficiently compelling to permit us to disregard the panel's refusal to find these mitigating factors.

Respondent asserts that she is entitled to the mitigating factor of absence of a dishonest or selfish motive. However, respondent pled guilty to obstruction of official duty, which was based on the allegation she made a false statement to the officers who responded to the accident. A conviction is conclusive evidence of the crime. See *In re Angst*, 278 Kan. 500, 504, 102 P.3d 388 (2004). The panel could have inferred that she made the false statement to avoid charges, thus acting with a dishonest or selfish motive.

Respondent urges us to conclude that she made a full and fair disclosure to the disciplinary board. But the panel was in the best position to assess both respondent's demeanor and her willingness to fully and fairly respond to questions. We simply will not second-guess the panel's refusal to find this mitigating factor.

Additionally, respondent points out that she testified that her younger brother was hospitalized around the time of her accident, and she argues that as a result, the panel should have found the mitigating factor of personal or emotional problems. The respondent, however, testified only that there was a "good chance" she

was self-medicating as a result of her brother's hospitalization. At best, we could conclude that respondent's brother's health may have contributed to her substance abuse. Again, because the panel was in the best position to hear and evaluate respondent's testimony, we will not override the panel's conclusion that respondent's brother's health issues did not warrant mitigation.

Finally, respondent also asks this court to find that her remorse is a mitigator. At the conclusion of her questioning respondent stated:

"I'm very sorry for my actions. I'm sorry to Mr. Phannes. I'm not sure how to pronounce his name. I've never had a chance to personally apologize to him, and I'm sorry to him most. I'm sorry to my family and friends, and I'm sorry to the legal profession. I know that this doesn't necessarily have anything to do with my practice of law, but that my actions outside of my practice still impact the legal community, and so I'm sorry for that."

The panel heard this testimony and apparently rejected it as insufficiently mitigating. We see no reason to override that conclusion.

## RESPONDENT'S REQUEST FOR PROBATION

The hearing panel denied respondent's request for probation and respondent took exception to this denial. A hearing panel is not permitted to grant probation unless the respondent submits a "workable, substantial, and detailed plan of probation." Supreme Court Rule 211(g)(3)(i) (2011 Kan. Ct. R. Annot. 336). The probation plan must be in effect prior to the disciplinary hearing. Supreme Court Rule 211(g)(3)(ii) (2011 Kan. Ct. R. Annot. 336). Additionally, the conduct must be able to be corrected by probation and the probation must be in the best interest of the citizens of Kansas. Supreme Court Rule 211(g)(3)(iii)-(iv) (2011 Kan. Ct. R. Annot. 336).

The panel concluded respondent's probation plan was not in effect at the time of the hearing, it was not workable, substantial, and detailed, and it was not in the public's best interest. Respondent took exception to all three conclusions.

The panel correctly concluded respondent's plan was not workable, substantial, and detailed. In support of her probation request,

respondent submitted a one-page probation plan that included, among other items, that she was "not to violate the law" and would undergo "[e]valuation and treatment to address any substance abuse issues." The plan further provided that respondent's supervising attorney would be required to submit quarterly reports on the status of respondent's practice and ability to practice law, but it required no ongoing measures to address the problems leading to respondent's convictions and contains no dates and no specific providers. Although respondent states that she will take additional measures "on request," if we were to approve the plan, we would necessarily be required to rely upon respondent's supervising attorney and the Disciplinary Administrator to request that respondent take steps to rectify any issues she might have, rather than relying on respondent to act in accordance with a detailed plan to rectify her misconduct.

The panel also justifiably concluded the plan was not in place prior to the hearing. Although respondent submitted the probation plan 2 weeks before the hearing, her supervising attorney had not yet even reviewed respondent's practice. At the disciplinary hearing, respondent's counsel suggested that the plan was in place because her supervising attorney could request to review her files or request she go to treatment. But although respondent had spoken to her supervising attorney, the two had not arranged a time for him to review her practice or to submit reports to the Disciplinary Administrator. Under these circumstances, the panel correctly concluded the plan was not in effect at the hearing.

Respondent also disputes the panel's conclusion that placing her on probation would not be in the best interests of the public. The panel indicated its concern about respondent's potential for substance abuse after hearing her testimony and determined probation was not in the public's interest. The panel's concern about future abuse weighs against probation being in the interest of the state.

We conclude respondent's failure to submit and implement a workable probation plan prevented the panel from recommending her for probation.

## DISCIPLINE

Before considering the discipline to be imposed, we pause to

note the respondent's request at oral argument that we consider her renewed efforts to address her substance abuse issues. Specifically, respondent asks that we consider that she sought and received an evaluation from Professional Treatment Services in April 2012; she signed a monitoring agreement with KALAP that expires in June 2013; and she has resumed her attendance at AA meetings on a weekly basis. The Disciplinary Administrator does not object to our consideration of these efforts. Thus, in imposing the discipline determined below, we have considered respondent's renewed steps to address her substance abuse issues.

The panel recommended that we suspend respondent for a period of 3 months and condition reinstatement on her seeking additional treatment. Respondent requests that we impose a probationary period—a position we already have rejected. The Disciplinary Administrator recommends that respondent be suspended for a period not to exceed 2 years.

We agree that given the gravity of and potential harm from respondent's actions, a period of suspension is appropriate. Respondent's license shall be suspended for a 2-year period. After respondent serves 3 months of this suspension, this court will suspend the remaining 21-month period if respondent meets the following conditions during the remaining probationary time period: complies with all recommendations from her Professional Treatment Services evaluation, continues her monitoring agreement with KALAP, permits her proposed probation supervising attorney to review her practice and provide reports to the Disciplinary Administrator as requested by the Disciplinary Administrator, maintains an ignition interlock device, submits to drug and alcohol screenings when requested to do so by the Disciplinary Administrator or her proposed supervising attorney, and seeks additional treatment when requested to do so by the Disciplinary Administrator or her supervising attorney. Respondent also is prohibited from consuming alcohol or cereal malt beverages. Respondent must comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379). The costs of these proceedings shall be assessed to the respondent.

## CONCLUSION

IT IS THEREFORE ORDERED that Megan Leigh Harrington be suspended from the practice of law in the state of Kansas for 2 years in accordance with Supreme Court Rule 203(a)(2) (2011 Kan. Ct. R. Annot. 280), effective on the filing of this opinion. After respondent has served 3 months of suspension, the remaining 21 months will be stayed as long as respondent meets the terms and conditions set forth above.

IT IS FURTHER ORDERED that if Megan Leigh Harrington fails to abide by the terms and conditions set forth above, a show cause order shall be issued to respondent.

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.