IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,897

In the Matter of SAM S. KEPFIELD,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed April 3, 2015. One-year suspension suspended, and respondent placed on 3 years' supervised probation.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, and *Duston J. Slinkard*, Deputy Disciplinary Administrator, were on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Sam S. Kepfield*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Sam S. Kepfield, of Hutchinson, an attorney admitted to the practice of law in Kansas in 1989.

On July 16, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on July 24, 2014. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on August 20, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.2 (2014 Kan. Ct. R. Annot. 470) (scope of representation); 1.3 (2014 Kan. Ct. R. Annot. 475) (diligence);

1

1.4(a) (2014 Kan. Ct. R. Annot. 495) (communication); and 1.16(d) (2014 Kan. Ct. R. Annot. 583) (termination of representation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     On November 8, 2011, while incarcerated, J.L. sent the respondent a letter, seeking representation. J.L. sought to hire the respondent to represent him in a challenge to the retroactive application of amendments to regulations which affected the computation of good time credits. The goal of the representation was to secure J.L.'s release from prison.

"9.     The respondent accepted the representation and directed J.L. to forward $1,000 for a retainer and $1,000 for anticipated additional fees. On November 22, 2011, J.L. requested that a $2,000 check, drawn on his inmate account be issued to the respondent. The respondent received and deposited the funds.

"10.    At the time the respondent acknowledged receipt of the $2,000, the respondent clarified that the case would proceed as a petition for habeas corpus, challenging the computation of J.L.'s sentence with a goal of securing his release. The respondent further explained the need for exhausting administrative remedies and the timing of filing a petition. To that end, the respondent questioned whether J.L. had filed an administrative grievance and/or appealed an administrative grievance. Finally, the respondent directed J.L. to contact the respondent's office as soon as possible with information about the status of administrative remedies already pursued.

"11.    According to the respondent's time records it appears that in mid-March, 2012, the respondent met with J.L. for the first time. Then, on July 9, 2012, the

2

respondent met with J.L. for a second time. The respondent performed some amount of work on J.L.'s case in August, 2012.

"12.    Despite receiving several letters from J.L., from July, 2012, to September, 2013, the respondent did not write to or meet with J.L.

"13.    According to his time records, the respondent performed research on J.L.'s case on January 24, 2013, and again on July 16, 2013.

"14.    Without the assistance of the respondent, on April 1, 2013, J.L. filed an administrative grievance. On April 26, 2013, the administrative grievance was denied.

"15.    J.L. appealed the denial of his grievance to the warden. On April 30, 2013, the warden denied the appeal.

"16.    Thereafter, J.L. appealed the denial of his grievance to the Kansas Secretary of Corrections. On May 10, 2013, the Kansas Secretary of Corrections denied J.L.'s grievance.

"17.    Having heard nothing from the respondent, on June 28, 2013, J.L., *pro se*, filed a petition for writ of habeas corpus in the District Court of Reno County, Kansas. On July 2, 2013, J.L. wrote to the respondent and informed the respondent that he had filed a petition for a writ of habeas corpus and asked, 'Do you still want to represent my interests in my Petition that's recently been filed in the Reno County District Court?' J.L. asked the respondent to respond as soon as he could. The respondent did not respond to J.L.'s letter.

"18.    On July 10, 2013, J.L. sent the respondent two letters by registered mail. In one of the letters, J.L. informed the respondent that the petition for writ of habeas corpus would be heard on July 30, 2013. J.L. authorized the respondent to seek and obtain a continuance in order for the respondent to familiarize himself with J.L.'s issues. In the other letter, J.L. included a copy of J.L.'s petition and informed the respondent of

3

what the respondent needed to do to arrange for a meeting with J.L. The respondent did not respond to J.L.'s July 10, 2013, letters nor did he arrange a meeting with J.L.

"19.    On July 30, 2013, the respondent failed to appear in court for the hearing on J.L.'s petition for a writ of habeas corpus. J.L. informed the court that he had retained the respondent to represent him. The court directed J.L. to attempt to contact the respondent and file an amended petition. Further, the court scheduled a second hearing for August 27, 2013.

"20.    On July 30, 2013, J.L. wrote to the respondent and informed him of what occurred during the hearing that day. Additionally, J.L. asked the respondent to return the $2,000.00 if he was not going to represent him.

"21.    In early August, 2013, J.L. sought the assistance of the prosecutor in contacting the respondent. The prosecutor contacted the respondent. Thereafter, the respondent's time records indicate that he spent three hours researching J.L.'s case.

"22.    After receiving J.L.'s letter and after receiving the contact from the prosecutor, the respondent did not contact J.L.

"23.    Also in early August, 2013, J.L. wrote to the administrative judge in Reno County District Court, seeking assistance in communicating with the respondent. On August 14, 2014, the judge wrote to J.L., acknowledging J.L.'s letter. The judge sent a copy of his letter to the respondent. The respondent did not contact J.L. after receiving the judge's letter.

"24.    On August 27, 2013, the court held the second hearing. Again, the respondent did not appear. The court denied the petition.

"25.    On September 3, 2013, the respondent visited J.L. in prison. During the meeting, the respondent indicated that he had talked with the court and the prosecutor and he would not have any difficulty in re-opening J.L.'s case, however, after that date, respondent made no effort to get that accomplished.

4

"26.     On September 9, 2013, J.L. wrote to the respondent and again requested that he return the $2,000 paid for the restitution. To date, the respondent has not refunded the unearned fees.

"*Conclusions of Law*

"27.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, and KRPC 1.16, as detailed below.

"KRPC 1.2

"28.     Lawyers must abide by a client's decision regarding lawful objectives of the representation. Further, lawyers must consult with their client regarding the means to pursue. KRPC 1.2. In this case, the respondent violated KRPC 1.2, when he failed to consult with J.L. regarding the means to pursue the goal of the representation. Thus, the hearing panel concludes that the respondent violated KRPC 1.2.

"KRPC 1.3

"29.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent J.L. by failing to take any action on behalf of J.L. in pursuit of the purpose of the representation. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"30.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to

5

maintain adequate communication with J.L. He failed to respond to letters, and he failed to arrange for meetings with J.L. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.16

"31.    KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

J.L. repeatedly requested that the respondent return the $2,000.00 fee paid. To date, the respondent has not returned the unearned fees. The hearing panel concludes that the respondent violated KRPC 1.16(d) by failing to return the unearned fees.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"32.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

6

"33.     *Duty Violated*.  The respondent violated his duty to his client to provide diligent representation and adequate communication.

"34.     *Mental State*.  The respondent knowingly violated his duty.

"35.     *Injury*.  As a result of the respondent's misconduct, the respondent caused J.L. actual injury.

"Aggravating and Mitigating Factors

"36.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"37.     *Prior Disciplinary Offenses*.  The respondent has been previously disciplined on one occasion. In 2010, the disciplinary administrator informally admonished the respondent for having violated KRPC 3.3, KRPC 8.2, and KRPC 8.4.

"38.     *Selfish Motive*.  The respondent's misconduct was motivated by selfishness, as evidenced by his failure to refund the $2,000 unearned fees. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by selfishness.

"39.     *A Pattern of Misconduct*.  Throughout the period of representation, the respondent failed to properly communicate with J.L. Further, throughout the period of representation, the respondent failed to diligently represent J.L. As such, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

"40.     *Multiple Offenses*.  The respondent committed multiple rule violations. The respondent violated KRPC 1.2, KRPC 1.3, KRPC 1.4, and KRPC 1.16. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

7

"41.     *Vulnerability of Victim*.  J.L. was incarcerated throughout the period of representation. Because J.L. was incarcerated, he was vulnerable to the respondent's misconduct.

"42.     *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1989. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

"43.     *Indifference to Making Restitution*.  The respondent failed to make restitution to J.L. for the $2,000 in unearned fees.

"44.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"45.     *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*.  The respondent suffers from depression and has since high school. It is clear that the respondent's depression contributed to his misconduct.

"46.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*.  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"47.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*.  The respondent is an active and productive member of the bar of Hutchinson, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"48.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"*Recommendation*

"49.    The disciplinary administrator recommended that the respondent be suspended from the practice of law for a period of 90 days. The disciplinary administrator further recommended that the imposition of the suspension be suspended and that the respondent be placed on supervised probation for a period of 3 years, under the respondent's proposed plan of probation. The respondent requested that he be placed on probation under his proposed plan of probation.

"50.    Kan. Sup. Ct. R. 211(g)(3) details the circumstances that must be present before a hearing panel may recommend that a respondent be placed on probation.

'The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

'(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of

9

probation to the Disciplinary Administrator and each member of the Hearing Panel at least 14 days prior to the hearing on the Formal Complaint;

'(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii)     the misconduct can be corrected by probation; and

'(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"51.     In this case, the respondent failed to put the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan. For example, pursuant to paragraph 18 of his probation plan, the respondent agreed to 'follow the voluntary monitoring agreement entered into with KLAP on June 24, 2014.' Paragraph 4 of the monitoring agreement provides as follows:

'Support and Self Help Groups. I agree to attend the Wichita "Reserved Group" each month, and to be present for a minimum of 9 meetings over the next 12 months. I further agree to attend one Twelve Step meeting on at least a bi-weekly basis. I agree that the majority of these meetings will be Al-Anon meetings, though I may occasionally attend an open AA speaker meeting.'

As of the date of the hearing on the formal complaint, on August 20, 2014, nearly 2 months later, the respondent had not attended any Twelve Step meetings.

"52.     Because the respondent did not comply with each of the terms and conditions of the probation plan, under Kan. Sup. Ct. R. 211(g)(3), the hearing panel is unable to consider probation as a possible recommendation in this case.

10

"53.     Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 1 year. The hearing panel further recommends that all but 90 days of the suspension be suspended. Following the completion of the 90-day period of actual suspension, the hearing panel recommends that the respondent be allowed to resume the practice of law, subject to a 3-year period of supervised probation, pursuant to the terms and conditions detailed in his proposed plan of probation and the following additional terms and conditions:

'a.     Prior to being placed on probation, the respondent will refund $2,000 to J.L. Further, the respondent will provide written evidence to the disciplinary administrator that he has refunded $2,000 to J.L.

'b.     Prior to being placed on probation, the respondent will submit to a thorough psychological evaluation performed by a psychologist approved by the disciplinary administrator. The respondent will provide a copy of the report of the psychological evaluation to the disciplinary administrator, the KALAP monitor, and the probation supervisor. Upon receipt of the report of the psychological evaluation, the respondent will immediately comply with all recommendations contained in the report. Throughout the period of probation, the respondent will comply with all recommendations contained in the report.'"

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties; it determines whether violations of KRPC exist; and, if they do, it decides the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945,

11

258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2014 Kan. Ct. R. Annot. 363). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. The panel's findings of fact are therefore deemed admitted. Supreme Court Rule 212(c) and (d) (2014 Kan. Ct. R. Annot. 383). The evidence before the hearing panel established by clear and convincing evidence that the charged misconduct violated KRPC 1.2 (2014 Kan. Ct. R. Annot. 470) (scope of representation); 1.3 (2014 Kan. Ct. R. Annot. 475) (diligence); 1.4(a) (2014 Kan. Ct. R. Annot. 495) (communication); and 1.16(d) (2014 Kan. Ct. R. Annot. 583) (termination of representation), and it supports the panel's conclusions of law. We therefore adopt the panel's conclusions of law.

Prior to oral argument before this court, respondent filed an affidavit regarding his probation plan. The affidavit described his compliance with the plan since the panel hearing. It also described his mental health evaluation and treatment, as well as his attendance at attorney support group meetings and Twelve Step meetings. At oral argument, he and counsel further informed the court that respondent had paid $2,000 into counsel's trust account and that the amount would be paid by counsel to the estate or heirs of J.L.

The Deputy Disciplinary Administrator now recommends a 1-year suspension, imposition of which would be immediately suspended, and placement on 3 years' supervised probation under the respondent's probation plan. The respondent agrees with this recommended discipline.

This court is not bound by the recommendations of the Disciplinary Administrator or the hearing panel. *In re Mintz*, 298 Kan. 897, 911-12, 317 P.3d 756 (2014). The court bases each disciplinary sanction on the specific facts and circumstances of the violations and any aggravating and mitigating circumstances presented in the case. *Mintz*, 298 Kan. at 912. This court has taken the position that, while prior cases may have some bearing on the sanctions that the court elects to impose, the precedent set by such prior cases must give way to consideration of the unique circumstances in each case. *In re Busch*, 287 Kan. 80, 86-87, 194 P.3d 112 (2008). This court concerns itself less with the sanctions that were appropriate in other cases and more with the discipline appropriate under the facts of the case before us. *In re Dennis*, 286 Kan. at 738.

In this case, we are persuaded that respondent's misconduct was largely a product of his depression, which is being successfully monitored and treated. We also note his effort to make full restitution of the fee paid by J.L., despite financial challenges, and his attendance at attorney support group and Twelve Step meetings. We therefore hold that the discipline jointly recommended by the Deputy Disciplinary Administrator and respondent should be imposed.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Sam S. Kepfield be and is hereby disciplined by a 1-year suspension from the practice of law, imposition of which is suspended immediately, and placement on 3 years' supervised probation, as outlined in his probation plan. See Supreme Court Rule 203(a)(2) (2014 Kan. Ct. R. Annot. 306).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

13