IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 112,897
119,709

In the Matter of SAM S. KEPFIELD,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed March 15, 2019. Probation revoked; one-year suspension reinstated; additional consecutive three-year suspension imposed, stayed after six months to begin three years' supervised probation.

*Matthew J. Vogelsberg,* Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, and *Penny R. Moylan*, Deputy Disciplinary Administrator, were on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Sam S. Kepfield*, respondent, argued the cause pro se.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Sam S. Kepfield, of Hutchinson, an attorney admitted to the practice of law in Kansas in 1989.

On April 3, 2015, the court suspended respondent's license to practice law for a period of one year for violating Kansas Rules of Professional Conduct (KRPC). Imposition of that discipline was suspended and respondent was placed on supervised probation for a period of three years. See *In re Kepfield*, 301 Kan. 662, 670, 346 P.3d 332 (2015).

1

On March 14, 2018, the office of the Disciplinary Administrator filed a formal complaint against respondent alleging new violations of the KRPC. On March 29, 2018, the respondent timely filed an answer to the formal complaint. In his answer, the respondent generally admitted to violations of KRPC.

On April 11, 2018, the Disciplinary Administrator filed a motion with this court to revoke respondent's three-year supervised probation. Thereafter, the chairperson of the Kansas Board for Discipline of Attorneys entered an order consolidating the motion to revoke respondent's probation with the pending formal complaint. See Rule 211(g)(10) (2018 Kan. S. Ct. R. 251).

On May 8, 2018, the hearing panel called the consolidated matters. Respondent appeared in person and by counsel. Before the hearing began, respondent stipulated to certain facts and rule violations alleged against him in the formal complaint. Specifically, respondent stipulated his conduct violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4 (2018 S. Ct. R. 293) (communication); 1.15(a) (2018 Kan. S. Ct. R. 328) (safekeeping property); 1.16(d) (2018 Kan. S. Ct. R. 333) (terminating representation); and 8.4(c) (2018 Kan. S. Ct. R. 381) (misconduct involving dishonesty, fraud, deceit, or misrepresentation). Because the respondent admitted to rule violations, the panel heard evidence on the merits of the formal complaint and motion to revoke probation as well as evidence in aggravation and mitigation at the same time.

Although respondent stipulated to violating KRPC 1.1 and 1.4, after hearing additional evidence, the panel concluded respondent did not violate these rules. Further, the panel concluded respondent did not violate KRPC 3.1 (2018 Kan. S. Ct. R. 343) (meritorious claims and contentions) and 3.3 (2018 Kan. S. Ct. R. 344) (candor toward the tribunal). Accordingly, these four allegations were dismissed.

2

A majority of the hearing panel determined respondent violated KRPC 1.3 and 1.16(d). The panel unanimously determined that respondent violated KRPC 1.15(a); 8.1(a) (2018 Kan. S. Ct. R. 379) (false statement in connection with disciplinary matter); and 8.4(c).

Because the hearing panel concluded the respondent violated certain Kansas Rules of Professional Conduct as alleged in the formal complaint, the panel determined respondent violated certain terms and conditions of his current probation plan. See Rule 211(g)(11) (2018 Kan. S. Ct. R. 251).

After the hearing, the panel made the following detailed findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact and Conclusions of Law*

. . . .

"8.     On April 3, 2015, in case number 112,897, the Kansas Supreme Court placed the respondent on probation for having violated Rules 1.2 (scope of representation), 1.3 (diligence), 1.4(a) (communication), and 1.16(d) (terminating representation). *In re Kepfield,* 301 Kan. 662, [670,] 346 P.3d 332 (2015).

"9.     In placing the respondent on probation, the court stated:

'In this case, we are persuaded that respondent's misconduct was largely a product of his depression, which is being successfully monitored and treated. We also note his effort to make full restitution of the fee paid by J.L., despite financial challenges, and his attendance at attorney support group and Twelve Step meetings. We therefore hold

3

that the discipline jointly recommended by the Deputy Disciplinary Administrator and respondent should be imposed.

'CONCLUSION AND DISCIPLINE

'IT IS THEREFORE ORDERED that Sam S. Kepfield be and is hereby disciplined by a one-year suspension from the practice of law, imposition of which is suspended immediately, and placement on three years' supervised probation, as outlined in his probation plan. See Supreme Court Rule 203(a)(2) (2014 Kan. Ct. R. Annot. 306).'

"10.     The respondent's probation plan, adopted by the Kansas Supreme Court, provided:

'OVERVIEW

'Respondent is a fifty (50) year old criminal practitioner. His practice consists of appointed and retained criminal work. The Respondent has several clients whom he represents on Domestic matters. However, he is closing out those files and has decided to eliminate that portion of his practice.

'Respondent has been sanctioned on two prior occasions, both were informal admonitions.

'Respondent's major challenge, as with many sole practitioners, is that he does not have anyone to turn to for advice nor does he have support staff to handle the administrative portion of his practice.

'PROPOSED SUPERVISOR

'Sarah McKinnon of Hutchinson, Kansas has agreed to act as supervisor for the Respondent. Proposed supervising attorney is a practicing lawyer

4

handling similar types of cases as Respondent. She is the chief public defender of Reno County. Ms. McKinnon knows the Respondent and has worked on a number of cases with him over the years.

'Further, Ms. McKinnon is Respondent's KLAP monitor.

## 'PROPOSED PROBATION PLAN

'1.     The Respondent's practice will be supervised by Sarah McKinnon, a licensed attorney in good standing in Hutchinson, Kansas.

'2.     The Respondent shall allow Ms. McKinnon access to his files, calendar, operating account and trust account records.

'3.     Respondent shall comply with any requests made by the supervising attorney.

'4.     During the first year and a half of supervision, the Respondent shall meet with the supervising attorney once a week. Said meeting shall be face-to-face.

'5.     During the final six months of the probation period, the Respondent shall meet with Ms. McKinnon per her direction.

'6.     Ms. McKinnon shall prepare and submit a detailed monthly report to the Disciplinary Administrator regarding Respondent's status on probation.

'7.     Ms. McKinnon shall conduct an immediate and detailed audit of the Respondent's files.

5

'8.     Six months after the completion of the first audit, Ms. McKinnon shall conduct a second audit of the Respondent's files.

'9.     At the completion of the supervised probation, Ms. McKinnon shall conduct a final audit.

'10.    After each audit, Ms. McKinnon shall prepare and submit a report regarding same to the Disciplinary Administrator's Office.

'11.    Should Ms. McKinnon discover any violations of the Kansas Rules of Professional Conduct, she shall include such information in her report to the Disciplinary Administrator's Office to facilitate investigation of the same.

'12.    Ms. McKinnon shall provide the Respondent with a copy of each report referenced above.

'13.    Respondent shall follow all recommendations of his supervisor and shall immediately correct all deficiencies noted in Ms. McKinnon's periodic reports and audit reports.

'14.    The supervisor shall determine whether Respondent's office procedures are appropriate and effective. The supervising attorney shall confirm that Respondent has an appropriate calendaring system, method of notifying clients for hearings and scheduled meetings, billing procedures, as well as appropriate methods for tracking client and opposing counsel contact, including documenting all phone messages and phone contacts.

'15.    At the weekly meetings, Respondent and supervisor shall review all new cases and discuss the course of action to be taken as to each. Further Respondent shall discuss all potential problems he has noted in each of his cases.

'16.     Respondent and supervisor shall review the following week's schedule in order to assure that notices have been sent to all appropriate parties, that appropriate preparation has been carried out, and that all updates to the files have been completed.

'17.     Ms. McKinnon shall be acting as an officer and agent of the Court while supervising the Respondent in monitoring his legal practice. The supervisor shall be afforded all immunities by Supreme Court Rule 223 (2003 [*sic*] Kan. Ct. R. Annot. 306), during the course of this activity and pursuant to this Order.

'18.     Respondent shall follow the voluntary monitoring agreement entered into with KLAP on June 24, 2014. (attached)

'19.     The Respondent shall continue to cooperate with the Disciplinary Administrator's Office. If the Disciplinary Administrator requires any further information, the Respondent shall timely provide said information.

'20.     The Respondent shall not violate the provisions of his probation or the Kansas Rules of Professional Conduct. In the event the Respondent violates any of the terms of his probation or any of the Kansas Rules of Professional Conduct during the probationary period, the Respondent shall immediately report such violations to his supervisor and the Disciplinary Administrator.

'21.     Respondent shall follow the dictates of Supreme Court Rule 211(g).

'22.     Respondent shall pay the costs in an amount to be certified by the Disciplinary Administrator's Office.'

"11.     On April 11, 2018, the disciplinary administrator filed a motion with the Kansas Supreme Court to revoke the respondent's probation. In support of the motion, the disciplinary administrator alleged:

'1.     On April 3, 2015, this court ordered that Respondent be disciplined by a one-year suspension from the practice of law. The court further ordered that the one-year suspension be suspended immediately, and the Respondent be placed on three years' supervised probation, as outlined in the Respondent's probation plan.

'2.     The Respondent's probation plan provided, in relevant part, that "Respondent shall not violate the provisions of his probation or the Kansas Rules of Professional Conduct."

'3.     On December 7, 2017, the Kansas Board for Discipline of Attorney's Review Committee determined probable cause existed to find that Respondent had violated one or more provisions of the Kansas Rules of Professional Conduct (KRPC), and directed that a Formal Complaint be filed.

'4.     On March 14, 2018, a Formal Complaint, in Case Nos. DA 12,657 and DA 12,710, was filed against Respondent, alleging violations of KRPC 1.1, 1.3, 1.4, 1.15, 1.16, 3.1, 3.3, 8.1, and 8.4.

'5.     On March 29, 2018, the Respondent filed an answer to the Formal Complaint, admitting most of the facts pled within, and admitting to unspecified violations of the KRPC.

'6.     Kansas Supreme Court Rule 211(g)(9) provides that "upon receiving other credible evidence that the Respondent has violated one or more probation conditions, the Disciplinary Administrator may file a motion to revoke probation with the Supreme Court and the Chairman of

the Board for Discipline of Attorneys. The filing of such a motion shall automatically suspend the running of probation time and continue the supervision until the motion is resolved.'

"12. On April 13, 2018, John D. Gatz, Chairman of the Kansas Board for Discipline of Attorneys, entered an order of consolidation under Rule 211(g)(10). The order provided:

'On this 13th day of April, 2018, the Disciplinary Administrator's Amended Motion to Revoke Probation and consolidate the hearing on the Motion to Revoke Probation with the formal complaint filed in DA12,657 and DA12,710 comes before the Chairman of the Kansas Board for Discipline of Attorneys.

'The Chair finds as follows:

'1. After a Motion to Revoke Probation is filed, the Chairman of the Kansas Board for Discipline of Attorneys is required to "immediately appoint one Board Member of the Kansas Board for Discipline of Attorneys to conduct an expedited hearing, or consolidate with a pending matter to determine whether the Respondent has failed to comply with one or more probation conditions." Kansas Supreme Court Rule 211(g)(10).

'2. A hearing on the formal complaint filed *In the Matter of Sam S. Kepfield*, DA12,657 and DA12,710 is currently scheduled for May 8, 2018.

'3. The Motion of the Disciplinary Administrator to Revoke Probation and determine whether Respondent has failed to comply with one or more probation conditions should be and is hereby consolidated with the formal complaint filed in DA12,657 and DA12,710 now set for hearing on May 8, 2018.

9

'IT IS SO ORDERED.'

"13.     Because Mr. Gatz consolidated the allegation that the respondent violated the terms and conditions of his probation with the two pending disciplinary complaints, the hearing panel considers all three of these matters.

"DA12657

"14.     In the written stipulation entered on May 8, 2018, the parties stipulated to the following facts:

'5.     On or about January 7, 2016, Respondent was appointed by Reno County District Court Judge Timothy Chambers, to represent [E.S.], in the appeal of District Court Case No. 2008-CR-492 (Appeal Case No. 114,55), wherein the district court summarily dismissed [E.S.]'s post-conviction motion.

'6.     Respondent filed an appellate brief on March 1, 2016.

'7.     On August 26, 2016, the Court of Appeals affirmed the district court's dismissal of [E.S.]'s post-conviction motion.

'8.     On or about August 29, 2016, Respondent forwarded the Court of Appeals' decision to [E.S.] and informed him that a petition for Kansas Supreme Court review had to be filed within 30 days of the August 26, 2016 Court of Appeals' decision. Respondent did not tell [E.S.]: (1) that he would file the petition for [E.S.]; (2) that [E.S.] needed to let him know if [E.S.] wanted to petition for review; or (3) what would happen if [E.S.] did not let him know one way or another.

'9.     On September 19, 2016, [E.S.] sent a "Notice of Intent [to] Petition for Review" ("notice") to the Kansas Appellate Court Clerk's

10

office. The notice stated that [E.S.] wanted to pursue review. The notice also contained allegations critical to respondent and [E.S.]'s prior attorney.

'10.    Respondent received [E.S.]'s notice on September 23, 2016, three days before the deadline for filing a petition for review.

'11.    On September 23, 2016, Respondent sent [E.S.] a letter stating, "I take it that by filing a notice pro se, combined with your motion to have me removed as appellate counsel for your latest post-conviction motion, you do not wish me to file a petition for review. Therefore, I will not do so, and will consider my involvement in this matter at an end."

'12.    On September 26, 2016, the Kansas Appellate Court Clerk's office sent [E.S.] a letter informing him that his notice "could not be filed . . . because you are represented by counsel."

'13.    No petition for review was filed, and a mandate was subsequently issued on October 6, 2016.

'14.    On October 14, 2016, Kansas Appellate Court Clerk's office received an undated letter from [E.S.] stating that he no longer had a lawyer, due to his lawyer "quitting," and attached a copy of Respondent's September 23, 2016, letter.

'15.    On October 14, 2016, the Kansas Appellate Court Clerk's office wrote to [E.S.] and informed him that the office still considered him represented by Respondent and therefore, the office could not file his pro se pleading. The letter further informed [E.S.] that the Court of Appeals no longer had jurisdiction over the matter because it had been over 30 days since the Court of Appeals issued its decision and the mandate was issued on October 6, 2016.

'16.    That same day, Jennifer Bates, the Chief Deputy Clerk of the Kansas Court of Appeals, filed a complaint against Respondent.

'17.    On October 19, 2016, Deputy Disciplinary Administrator Kate Baird provided Respondent with a copy of the complaint and requested he provide a written response within 20 days.

'18.    On October 31, 2016, Respondent sent a responsive letter wherein he stated that prior to sending [E.S.] the September 23, 2016 letter, he met with Sarah McKinnon, his probation supervisor. Respondent further alleged:  "She read [E.S.'s notice] and agreed that it appeared that Mr. [E.S.] wished to proceed *pro se*. She advised me to write him a letter, and inform Mr. [E.S.] that since he wished to proceed *pro se*, my involvement was apparently at an end." Respondent further alleged that McKinnon strongly suggested that he write such a letter.

'19.    McKinnon was subsequently contacted by the Disciplinary Administrator's Office. McKinnon confirmed that she met with Respondent, reviewed [E.S.]'s notice and discussed writing a responsive letter to [E.S.]'s. However, she emphasized that she was not aware at the time of her discussion with Respondent, that the deadline for filing the petition for review was just three days away. McKinnon stated that had she known of the deadline, she would not have approved of the letter; but would have instead informed Respondent that he needed to file the petition for review.'

"15.    In addition to the facts contained in the stipulation, it is also relevant that on August 16, 2016, E.S. filed a motion to remove the respondent as counsel of record. The Court of Appeals denied E.S.'s motion on August 26, 2016, the same day the court issued its opinion affirming E.S.'s convictions.

"16. On September 19, 2016, E.S. forwarded a *pro se* petition for review to the Clerk of the Appellate Courts. The *pro se* filing was not accepted pursuant to Rule 5.01(d). That rule provides:

'Motion by Represented Party. A party represented by counsel may file a motion on the party's own behalf only to remove counsel or to file a supplemental brief. A motion filed under this subsection must be served on the party's counsel and all other parties to the appeal. This subsection does not apply to a party appearing pro se.'

Thus, under Rule 5.01(d), the only *pro se* filing that would be accepted by the Clerk of the Appellate Courts when a party is represented by counsel is a motion to remove counsel or a motion to file a supplemental brief. Because the respondent remained as attorney of record in E.S.'s appellate case, the Clerk of the Appellate courts could not accept E.S.'s *pro se* petition for review, forwarded on September 19, 2016. The respondent was not familiar with Rule 5.01(d).

"17. In order to extract himself as attorney of record for E.S., the respondent was required to comply with Rule 1.09, which provides:

'[b] . . . When withdrawal of an attorney who has appeared of record in an appellate proceeding will leave the client without counsel, the attorney may withdraw only when:

(1) the attorney has served a motion for withdrawal on the client—and on all parties—that:

(A) states the reasons for the withdrawal, unless doing so would violate an applicable standard of professional conduct;

(B) provides evidence that the withdrawing attorney provided the client:

13

(i) an admonition that the client is personally responsible for complying with all orders of the court and time limitations established by the rules of procedure or by court order; and

(ii) notice of the date of any pending hearing, conference, or deadline; and

(C) provides the court with a current mailing address and telephone number for the client, if known;

(2) the attorney has filed the motion with the clerk of the appellate courts under Rule 5.01; and

(3) a justice or judge of the appellate courts issues an order approving the withdrawal.'

The respondent did not file a motion to withdraw from his representation of E.S. Accordingly, the respondent remained as attorney of record for E.S.

"18. At the hearing on the formal complaint, the respondent explained that because the respondent's client made it clear that he did not wish to have the respondent continue to represent him, the respondent believed he should not file anything on behalf of his client. While the hearing panel is sympathetic to the respondent's position, a majority of the hearing panel concludes that the rules required that the respondent file a motion to withdraw from the representation and take action to protect E.S.'s interests. The respondent did not do so.

"19. Based on the stipulation and the evidence presented at the hearing on the formal complaint, a majority of the hearing panel concludes as a matter of law that the respondent violated Rules 1.3 (diligence) and 1.16 (termination of representation) in representing E.S.

14

"Rule 1.3

"20.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* Rule 1.3. The respondent failed to diligently represent E.S. in one limited way. On August 16, 2016, by filing a motion to have the respondent removed as counsel of record, E.S. made it clear to the respondent that he no longer desired the respondent's representation. At that point, diligent representation required the respondent to file a motion to withdraw. Because E.S.'s motion was denied and because the respondent failed to file a motion to withdraw as counsel, the respondent remained as attorney of record for E.S. As such, the Clerk of the Appellate Courts could not accept E.S.'s *pro se* petition for review filed on September 19, 2016. *See* Rule 5.09(1)(d). Finally, the respondent's lack of diligence caused E.S. to lose his chance to have the Kansas Supreme Court review the Kansas Court of Appeals' decision. At the hearing on this matter, the respondent argued that there was little likelihood that E.S. would have received any relief from the petition for review. The respondent's misconduct is not diminished by the respondent's belief that the petition for review had little likelihood of success. What E.S. lost was his opportunity to present his case to the Kansas Supreme Court for review. Because the respondent failed to act with reasonable diligence and promptness in representing his client, a majority of the hearing panel concludes that the respondent violated Rule 1.3.

"Rule 1.16

"21.     Rule 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. First, when an attorney is discharged, the attorney must withdraw from the representation. *See* Rule 1.16(a)(3). Clearly, E.S. did not want the respondent to continue to represent him. After E.S. filed his August 16, 2016, motion to remove the respondent as counsel of record, the respondent should have filed a motion to withdraw from the representation. The respondent failed to do so. The respondent's failure to file a motion to withdraw from the representation precluded E.S.'s ability to file pleadings on his own behalf. Accordingly, a majority of the hearing panel concludes that the respondent violated Rule 1.16(a)(3).

15

"22.	Additionally, Rule 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, . . .'

In this case, in order to take steps to the extent reasonably practicable to protect E.S.'s interests, the respondent should have timely filed a motion to withdraw from the representation as required by Rule 1.09. Because the respondent failed to withdraw from the representation, the respondent should have taken other action to preserve E.S.'s interest in filing a petition for review. Because the respondent failed to take any action to preserve E.S.'s interests in filing a petition for review, a majority of the hearing panel concludes that the respondent violated Rule 1.16(d).

"DA12710

"23.	In the written stipulation entered on May 8, 2018, the parties stipulated to the following facts:

'20.	On August 29, 2014, [E.M.] was arrested for driving under the influence of alcohol and was served with a notice of suspension of his driver's license after refusing to submit to alcohol testing.

'21.	[E.M.] was charged, in Hutchinson Municipal Court, with Driving Under the Influence (DUI).

'22.	Consequently, [E.M.] retained Respondent to represent him in the administrative driver's license suspension hearing with the Kansas Department of Revenue (KDOR hearing), as well as the DUI municipal court case.

16

'23.    [E.M.] and Respondent signed a retainer agreement on September 25, 2014. The agreement required [E.M.] to pay Respondent a $1,000 retainer, which encompassed $750 for the DUI case and $250 for the KDOR hearing. The Agreement further provided:

> "The initial retainer may be deposited in Attorney's operating account to pay for immediate expenses, such as filing fees, obtaining copies of complaints, videotapes, and other evidence, and any outside consultation Attorney believes necessary."

'24.    [E.M.'s] records indicate that on or about September 25, 2014, he paid Respondent $200.00; and on or about October 6, 2014, he paid Respondent $550.00. Thereafter, according to [E.M.'s] records, he made additional payments to Respondent, totaling $550.00 from July 2016, through November 2016.

'25.    Respondent did not provide [E.M.] a statement or accounting of fees and expenses until November 17, 2016. At that time, Respondent provided [E.M.] with a "Statement of Account," which documented he had billed 23.4 hours at an hourly rate of $150.00. The statement provided an incorrect total of $4,510, but documented that the client had paid $1,700.

'26.    The KDOR hearing was held on November 6, 2014.

'27.    On December 19, 2014, the KDOR hearing office issued a written order affirming [E.M.'s] driver's license suspension. The order indicates it was mailed to [E.M.] and Respondent.

'28.    Pursuant to relevant statutory authority, [E.M.] had until January 8, 2015, in which to file a petition for review of the KDOR order.

17

'29.   [E.M.] received a copy of the order prior to Christmas 2014. [E.M.] noted that a copy had been mailed to Respondent and assumed Respondent would contact him about what further action could be taken.

'30.   When he had not heard from Respondent by December 31, 2014, [E.M.] sent an email to Respondent, titled "Hearing," which read as follows:

> "Since the state disapproved my request, I guess we need to appeal to district court, have you had time to look at the video tape yet or have access to it. Please let me know, I feel we need to go after the officer if he was properly trained, after me talking to other officers, they said he should have been able to show me the record of the testing machine with no problem, they also said he didn't know what he was doing."

Respondent did not reply to [E.M.'s] December 31, 2014, email.

'31.   [E.M.] and Respondent had a meeting in January 2015, in which [E.M.] provided Respondent with a copy of the KDOR order.

'32.   Respondent acknowledged that he received [E.M.'s] December 31, 2014, email; but alleged that he did not realize it was referring to the KDOR order. In addition, Respondent alleged that he did not receive a copy of the order from KDOR.

'33.   [E.M.] left the January 2015 meeting believing Respondent would file the necessary appeal, or petition for judicial review, of the KDOR order.

'34.   On January 27, 2015, KDOR notified [E.M.] that his driving privileges had been suspended.

18

'35.    Respondent filed an untimely petition for judicial review of the KDOR order on February 24, 2015. Respondent initially told the investigator that he did not file the petition for judicial review until February 24, 2015, because [E.M.] had not submitted the filing fee. However, Respondent's file revealed that [E.M.] paid the filing fee to Respondent on January 30, 2015.

'36.    Respondent alleged, in the petition for judicial review, that it was untimely filed because the Respondent did not receive a copy of the order from KDOR, and he only learned of its existence on January 15, 2015. Respondent argued that KDOR's failure to provide him with a copy of the order excused the late filing.

'37.    KDOR filed a motion to dismiss, arguing the petition was filed out of time. Respondent did not file a written response to the motion to dismiss, which was heard on August 7, 2015. The respondent did not present any evidence at the hearing, even though [E.M.] was present at the hearing and available to testify.

'38.    On August 12, 2015, the district court granted the motion to dismiss, finding that [E.M.] had failed to satisfy his burden to show excusable neglect in filing the petition for judicial review out of time.

'39.    Respondent filed a motion to reconsider on August 21, 2015. The district court denied the motion on September 9, 2015, finding that [E.M.] did not offer or proffer any evidence at the hearing.

'40.    Respondent filed an initial notice of appeal on August 27, 2015, and an amended notice of appeal on September 15, 2015, following the order denying his motion to reconsider.

'41. Respondent failed to timely docket the appeal; consequently, on October 7, 2015, KDOR filed a motion to dismiss the appeal. Respondent did not respond to KDOR's motion; and the motion was thereafter granted on October 13, 2015, and the appeal was dismissed.

'42. On December 31, 2015, the respondent filed a motion to reinstate the appeal. The motion was ultimately granted by the Court of Appeals on January 8, 2016.

'43. Respondent's appellate brief alleged that the petition for judicial review should have been granted because Respondent did not receive a copy of the order from KDOR. Respondent did not address the fact that his client had received the KDOR order prior to the deadline for filing the petition for judicial review, or that he had received a copy of the KDOR order as of January 15, 2015, at the latest.

'44. On November 4, 2016, the Kansas Court of Appeals affirmed the district court's dismissal of the case.

'45. On November 22, 2016, the Respondent filed a petition for review with the Kansas Supreme Court, which was denied on November 9, 2017.

'46. On November 23, 2016, [E.M.] sent a letter to KDOR, alleging that Respondent misrepresented facts contained within the pleadings filed with the courts. KDOR forwarded the complaint to this office. On December 8, 2016, [E.M.] filed a complaint with this office regarding Respondent's representation of him in the KDOR and criminal proceedings. The complaint was docketed for investigation.

'47. During an August 10, 2017 interview, the investigator asked Respondent to account for the retainer paid by [E.M.] on September 2014. Respondent informed the investigator that he believed he placed

20

the retainer in his trust account. Consequently, the investigator requested that the Respondent provide him with trust account records to document the deposit.

'48.    The investigator also requested Respondent to provide him with evidence to document what Respondent did with the filing fee paid by [E.M.] on January 30, 2015, as well as any evidence to establish that Respondent sent billing statements to [E.M.], other than the one provided on November 17, 2016.

'49.    On August 14, 2017, Respondent wrote to the investigator, alleging that he believed [E.M.] paid the filing fee in cash, that he placed the cash into a bank bag in his office, and later used it to pay the filing fee. The August 14, 2017, correspondence did not contain any trust account records.

'50.    That same day, the investigator sent Respondent an email to inquire about the trust account records and billing statements. The Respondent replied on August 15, 2017, stating that he could locate no other billing statements. The Respondent did not answer the investigator's inquiry regarding the trust account records.

'51.    Consequently, on August 17, 2017, Deputy Disciplinary Administrator Deborah Hughes requested Respondent to provide her with all trust account and operating account records from September 1, 2014 to June 30, 2016.

'52.    On September 12, 2017, the Respondent replied, admitting that he hadn't had a trust account since 2011. The Respondent further alleged that he deposited his clients' money into a safe deposit box.'

"24.    In addition, the hearing panel finds that the respondent did not receive a copy of the written order affirming the suspension of E.M.'s driver's license from the

21

KDOR, despite the notation on the written order that KDOR sent the written order to the respondent.

"25.    During the hearing on the formal complaint, E.M. testified that on January 5, 2017, he met with the respondent and provided him with a copy of the written order affirming the suspension of E.M.'s driver's license. The respondent testified that he did not meet with E.M. until January 15, 2015. Based on all the evidence presented to the hearing panel, the hearing panel accepts the respondent's testimony that the meeting with E.M., where E.M. provided the respondent with a copy of the written order affirming the suspension of E.M.'s driver's license, occurred on January 15, 2015.

"26.    Based on the stipulation and the evidence presented at the hearing on the formal complaint, the hearing panel unanimously concludes that the respondent violated Rules 1.15 (safeguarding property), 8.1 (disciplinary matters), and 8.4 (professional misconduct) in representing E.M.

"Rule 1.15

"27.    Lawyers must properly safeguard their clients' property. Rule 1.15(a) specifically provides that:

'(a)    A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

In this case, the respondent deposited E.M.'s unearned fees and filing fees into an operating account with the respondent's own money. By commingling funds belonging to E.M. with funds belonging to the respondent and by failing to deposit E.M.'s unearned

22

fees and filing fees into an attorney trust account, the hearing panel unanimously concludes that the respondent violated Rule 1.15(a).

"Rule 8.1

"28.    Rule 8.1 provides:

'a lawyer . . . in connection with a disciplinary matter, shall not:

(a)    knowingly make a false statement of material fact; or

(b)    fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

In this case, during the disciplinary investigation, the respondent falsely told the attorney appointed to investigate the disciplinary complaint that he deposited the unearned fees paid by E.M. into his attorney trust account. The respondent knew that at the time he received the funds from E.M. he did not have an attorney trust account. Thus, the hearing panel concludes that the respondent knowingly made a false statement of material fact to the disciplinary investigator in connection with a disciplinary matter, in violation of KRPC 8.1(a).

"Rule 8.4(c)

"29.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' Rule 8.4(c). The respondent stipulated that during the disciplinary investigation, the respondent falsely told the

23

investigator that he believed he deposited the fees paid by E.M. into his attorney trust account. The respondent knew that he did not have a trust account at the time he received the fees from E.M. Accordingly, the hearing panel unanimously concludes that the respondent violated Rule 8.4(c).

"Probation Violation

"30.     Because the hearing panel concludes that the respondent violated the Kansas Rules of Professional Conduct in DA12657 and DA12710, the hearing panel also concludes that the respondent violated the term numbered 20 of the probation plan adopted by the Kansas Supreme Court in case number 112,897. *See* Rule 211(g)(11).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"31.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"32.     *Duty Violated*. The respondent violated his duty to his client to provide diligent representation. The respondent violated his duty to his client to properly deal with his client's fees. The respondent also violated his duty to his client to properly terminate the representation. Finally, the respondent violated his duty to the legal profession to properly cooperate during the disciplinary investigation.

"33.     *Mental State*. The respondent negligently and knowingly violated his duties.

"34.     *Injury*. As a result of the respondent's misconduct, the respondent caused potential injury to his clients.

24

"35.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    Prior Disciplinary Offenses. The respondent has been previously disciplined on three occasions.

On December 8, 2010, the disciplinary administrator informally admonished the respondent for violating Rules 3.3 (candor to the tribunal), 8.2 (statements regarding judges) and 8.4 (professional misconduct).

On April 3, 2015, the Kansas Supreme Court placed the respondent on probation for three years for violating Rules 1.2 (scope of representation), 1.3 (diligence), 1.4 (communication), and 1.16 (terminating representation).

On May 10, 2016, the disciplinary administrator informally admonished the respondent for violating Rule 1.1 (competence).

b.    Dishonest or Selfish Motive. The respondent misled the attorney assigned to investigate the respondent's conduct by indicating that he believed he deposited E.M.'s unearned fees into the respondent's trust account knowing that at the time he received E.M.'s unearned fees, the respondent did not have a trust account. Accordingly, the hearing panel concludes that the respondent's misconduct included conduct that was motivated by dishonesty.

c.    Multiple Offenses. The respondent committed multiple rule violations. The respondent violated 1.3 (diligence), 1.4 (communications); 1.15 (safekeeping property), 1.16 (terminating representation), 8.1 (disciplinary matters), and 8.4

25

(professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

d.       <u>Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process</u>. The respondent provided false information to the attorney appointed to investigate E.M.'s complaint when he told the investigating attorney that he believed he deposited E.M.'s unearned fees into the respondent's trust account. The respondent's false statement to the attorney appointed to investigate the disciplinary complaint amounts to bad faith obstruction of the disciplinary proceeding.

e.       <u>Vulnerability of Victim</u>. E.S. and E.M. were vulnerable to the respondent's misconduct.

f.       <u>Substantial Experience in the Practice of Law</u>. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1989. At the time of the misconduct, the respondent has been practicing law for more than 25 years.

"36.       Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.       <u>Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct</u>. As was pointed out in the earlier disciplinary case, the respondent suffers from depression and the respondent's depression appears to have contributed to his misconduct.

b.       <u>The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions</u>. Other than providing false information to the disciplinary

investigator, the respondent fully cooperated with the disciplinary process. The respondent entered into a stipulation and admitted violating multiple rules.

c.      Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent is an active and productive member of the bar of Hutchinson, Kansas. The respondent enjoys a reputation for providing good representation to an underserved population.

"37.      In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42      Suspension is generally appropriate when:

(a)      a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)      a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'7.2      Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.2      Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

27

"38.     The disciplinary administrator argued that disbarment is the appropriate discipline, relying on ABA Standard 8.1(a), which provides that '[d]isbarment is generally appropriate when a lawyer . . . knowingly violates the terms of a prior disciplinary order and . . . causes injury or potential injury to a client.'

"39.     The respondent recommended that he be allowed to continue to practice law, subject to the same plan of supervised probation approved by the Kansas Supreme Court in case number 112,897.

"40.     The hearing panel struggled with making a recommendation for discipline in this case. As argued by the disciplinary administrator, the respondent violated the terms of a prior disciplinary order when he violated the terms of probation. However, the misconduct which violated the terms of probation, standing alone, does not warrant disbarment.

"41.     Additionally, clearly, the respondent does good work for an underserved population in Reno County, Kansas. The results that he obtained for E.S. and E.M. were good results. However, the respondent's failure to timely establish a trust account and the respondent's false statement to the attorney investigating E.M.'s complaint coupled with the respondent's failure to withdraw from his representation of E.S. troubles the hearing panel.

"42.     Unfortunately, the hearing panel concludes that placing the respondent on probation has not served to be a sufficient deterrent to the respondent. Accordingly, the hearing panel concludes that a short suspension is appropriate in this case.

"43.     Based upon the stipulation, the findings of fact, the conclusions of law, and the ABA Standards for Imposing Lawyer Sanctions listed above, the hearing panel unanimously recommends that the Kansas Supreme Court suspend the respondent's license to practice law for a period of three years. The hearing panel further recommends that after the respondent has served six months of the suspension, the Court place the

respondent back on probation subject to the terms and conditions included in the Court's opinion in case number 112,897, for an additional three years. Finally, in the event the Court adopts the hearing panel's recommendation, the hearing panel also recommends that at the time the opinion is released in this case the following terms be added to the respondent's plan of probation:

'23.    The respondent will maintain an attorney trust account.

'24.    The auditor employed by the disciplinary administrator will conduct an audit of the respondent's trust account to cover the time period from when the account was established through the date of the Court's opinion in this case. During the period of probation following the respondent's suspension, the auditor employed by the disciplinary administrator will conduct an annual audit of the respondent's trust account. Following each audit, the auditor will prepare a report which details (1) whether the respondent is properly utilizing the attorney trust account, (2) all irregularities with the respondent's trust account, and (3) what the respondent needs to do differently to properly utilize the attorney trust account and eliminate the irregularities. The auditor will provide a copy of the report to the respondent, to counsel for the respondent, to the respondent's practice supervisor, and the disciplinary administrator. If violations of Rule 1.15 are discovered in the audits, the disciplinary administrator may file another motion to revoke the respondent's probation.'

"44.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint to which he filed an answer. Respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.15(a) (2018 Kan. S. Ct. R. 328) (safekeeping property); 1.16(d) (2018 Kan. S. Ct. R. 333) (terminating representation); 8.1(a) (2018 Kan. S. Ct. R. 379) (false statement in connection with disciplinary matter); and 8.4(c) (2018 Kan. S. Ct. R. 381) (misconduct involving dishonesty, fraud, deceit, or misrepresentation) by clear and convincing evidence and supports the panel conclusions of law.

We adopt all of the panel's findings and conclusions except for the finding in ¶ 35c that respondent violated KRPC 1.4 (2018 Kan. S. Ct. R. 293) (communication) as this allegation had been dismissed by the hearing panel. Accordingly, we find respondent

violated his existing probation plan by again violating the KRPC during his probationary period. See Rule 211(g).

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which respondent appeared, the office of the Disciplinary Administrator recommended that respondent be indefinitely suspended from the practice of law. The hearing panel recommended that respondent be suspended for three years from the practice of law, that after six months of that suspension, respondent be placed on a three-year probation subject to the terms and conditions of his previous probation plan with two additional terms and conditions.

The panel's recommendation is advisory and does not prevent this court from imposing a greater or lesser punishment. *In re Harrington,* 296 Kan. 380, 387, 293 P.3d 686 (2013) (citing Supreme Court Rule 212[f]). In determining the appropriate sanction, this court considers the facts and circumstances of the case as well as aggravating and mitigating factors. 296 Kan. at 387.

After carefully balancing the aggravating factors with the mitigating factors, the court determines the motion to revoke respondent's probation should be granted and the original one-year suspension from the practice of law should be reinstated. After respondent serves this one-year suspension, the court accepts the panel's recommendation that respondent be suspended from the practice of law for three years, that after six months of that suspension the respondent be placed on a three-year probation subject to the terms of his previous probation plan, plus the two new conditions recommended by the hearing panel. A minority of this court would impose the harsher sanction recommended by the Disciplinary Administrator of indefinite suspension from the practice of law.

In summary, respondent's total suspension from the practice of law is for 18 months followed by a three-year supervised probation. During respondent's probationary period he must comply with the probation terms set forth in the hearing panel's final report, ¶ 43, including new terms 23 and 24. See Supreme Court Rule 211(g)(6).

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Sam S. Kepfield be and is hereby ordered to serve his original one-year suspension from the practice of law followed by a three-year suspension from the practice of law. After serving six months of this second suspension, respondent will be placed on probation under the stated terms for three years. This order becomes effective upon the filing of this decision.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

ROSEN, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 112,897 and 119,709 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.